**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHAD LIGHTFOOT, ET AL., Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-434** |
| **PROGRESSIVE DIRECT INSURANCE COMPANY, ET AL., Defendants** | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is a motion to dismiss for failure to state a claim filed by Repwest Insurance Company ("Repwest").[1] Plaintiffs Chad Lightfoot, Geralyn Hawkins, and their minor children ("Plaintiffs") filed an opposition.[2] Repwest filed a response in support of its motion.[3]

## BACKGROUND

This case arises out of a vehicle accident in Orleans Parish and the subsequent investigation and criminal prosecution of Plaintiff Chad Lightfoot.[4] Plaintiffs allege that, on August 29, 2011, Lightfoot was involved in a vehicle accident in Orleans Parish and filed an insurance claim. Plaintiffs allege the resulting insurance claim was not "resolve[d]. . .to Mr. Lightfoot's satisfaction" and, as a result, in 2012, he brought a personal-injury lawsuit in Orleans Parish Civil District Court against multiple insurance companies, and others involved in processing his claim ("the underlying civil action").[5]

---

[1] R. Doc. 69.
[2] R. Doc. 77.
[3] R. Doc. 83.
[4] R. Doc. 60.
[5] *Id.* at ¶¶ 87-88. Repwest was named as a defendant in the 2012 state court petition.

Plaintiffs' allegations in the present matter stem from several incidents in this underlying civil action.

Regarding Repwest, Plaintiffs allege that its "claim data and claim materials were used in connection with the LSP staged-accident investigation and in framing Mr. Lightfoot as a ringleader while other similarly situated participants were treated more favorably."[6] Plaintiffs also allege Repwest "participated in, supplied, or permitted use of claim information in the broader insurance-fraud investigation that formed part of the criminal narrative against Mr. Lightfoot."[7] Plaintiffs further allege that, during the criminal proceedings, it was discovered there was no record of a $50,000 insurance payout to Plaintiff but that, despite this lack of evidence, Mr. Lightfoot was still criminally prosecuted.[8] Plaintiffs allege the criminal charges against Mr. Lightfoot were dismissed on October 15, 2024.[9]

Mr. Lightfoot and his spouse, Geralyn Hawkins, filed this suit *pro se* on October 20, 2025 in Orleans Parish Civil District Court.[10] In their original petition, Lightfoot and Hawkins brought a single claim against "unknown named Defendants" under La. R.S. 15:572.8, which provides compensation to persons wrongfully convicted and imprisoned.[11]

On November 10, 2025, Lightfoot and Hawkins filed a First Amended Petition, adding their minor children as named Plaintiffs and bringing eight counts against various

[6] *Id.* at ¶ 58.
[7] *Id.* at ¶ 59.
[8] *Id.* at ¶ 136.
[9] *Id.* at ¶ 142.
[10] R. Doc. 1-2.
[11] *Id.* at pp. 1-2.

defendants for actions related to Mr. Lightfoot's underlying civil action and resulting criminal prosecution, including Repwest.[12]

On January 20, 2026, Plaintiffs filed a Second Amended Petition in state court.[13] While this petition did not alter or amend any of the causes of action that Plaintiffs attempted to plead in their First Amended petition, it removed Plaintiffs' minor children as parties.[14]

Defendants removed the matter to this Court on February 27, 2026.[15] Following removal, multiple defendants filed motions to dismiss, including Repwest.[16] In its motion, Repwest argued that Plaintiffs' petition was devoid of any factual allegations that could plausibly state a claim for relief.[17]

On April 15, 2026, in response to the motions to dismiss, Plaintiffs moved, *pro se*, to file a First Amended Complaint in order to provide additional factual details, clarify their claims for relief, and "narrow[] certain theories to address issues raised or anticipated in Defendants' Rule 12(b)(6) motions."[18] The Plaintiffs attached their proposed amended complaint to their motion.[19] On April 22, 2026, the Court granted Plaintiffs' leave to file an amended complaint, but ordered Plaintiffs to file a new restated and amended complaint, as the Plaintiffs' proposed amended complaint failed to address the arguments Defendants made in their motions to dismiss.[20] The Court ordered

[12] R. Doc. 1-3 at p. 15.
[13] R. Doc. 1-4.
[14] *See id.* at pp. 1-2.
[15] R. Doc. 1.
[16] R. Doc. 50.
[17] R. Doc. 50-1 at pp. 6-7.
[18] R. Doc. 52 at p. 1.
[19] R. Doc. 52-1.
[20] R. Doc. 53 at p. 3.

Plaintiffs to file their new amended complaint, addressing "fully and completely, all arguments raised in the Defendants' motions to dismiss," on or before on May 6, 2026.[21]

On May 6, 2026, rather than file their amended complaint, Plaintiffs simultaneously moved to enroll counsel of record and for an extension to file their amended complaint.[22] The Court granted Plaintiffs' motion and ordered Plaintiffs to file their amended complaint on or before June 8, 2026.[23]

On June 8, 2026, Plaintiffs filed their Second Amended Complaint[24]—their fourth petition/complaint filed in the course of this litigation.[25] In Plaintiffs' Second Amended Complaint, Plaintiffs still bring claims against various Defendants associated with the underlying civil action and Mr. Lightfoot's criminal prosecution, including Repwest. While Plaintiffs' previous complaint only brought eight counts against these Defendants, their Second Amended Complaint attempts to assert twenty counts against the same Defendants for state law tort claims and constitutional violations.[26]

On June 19, 2026, Repwest again filed a motion to dismiss for failure to state a claim.[27] In its motion, Repwest argues the Second Amended Complaint still contains insufficient factual particulars to state a claim against Repwest, and that the only two counts that appear to relate to Repwest have prescribed.[28] Repwest argues the alleged actions against Repwest could have taken place at the latest by 2015 and thus have long prescribed.[29]

---

[21] *Id.*
[22] R. Doc. 56.
[23] R. Doc. 59.
[24] R. Doc. 60.
[25] This includes the amended complaint Plaintiffs attempted to file on April 15, 2026.
[26] In Plaintiffs Second Amended Complaint, they added Eric Cusimano, Jason Williams, and Sgt. Patrick Bradley as Defendants.
[27] R. Doc. 69.
[28] R. Doc. 69-1 at pp. 8-10.
[29] *Id.* at pp. 11, 14.

Plaintiffs argue that Repwest's own memorandum admits enough factual information to defeat a motion to dismiss.[30] Plaintiffs argue that prosecution-dependent claims accrue upon favorable termination, and that there are enough factual questions regarding Repwest's role that preclude a finding of prescription on a motion to dismiss.[31] Lastly, Plaintiffs request leave to amend should the Court conclude that additional facts should be pleaded regarding Repwest.[32]

**LEGAL STANDARD**

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[33] A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted.[34] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[35] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[36] "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[37]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to

---

[30] R. Doc. 77 at pp. 1-2, 4-5.
[31] *Id.* at pp. 9-10.
[32] *Id.* at p. 20.
[33] Fed. R. Civ. P. 8(a)(2).
[34] Fed. R. Civ. P. 12(b)(6).
[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[36] *Id.* (quoting *Twombly*, 550 U.S. at 555).
[37] *Id.* (quoting *Twombly*, 550 U.S. at 557).

relief.[38] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[39] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"[41] Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"[42] or "naked assertion[s]"[43] devoid of "further factual enhancement"[44] are not sufficient.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[45] However, "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[46] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[47] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[48] Whether a plaintiff "will be able to offer

---

38 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
39 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
40 *Id.* (citing *Twombly*, 550 U.S. at 556).
41 *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
42 *Iqbal*, 556 U.S. at 678 (citations omitted).
43 *Twombly*, 550 U.S. at 557.
44 *Id.*
45 *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).
46 *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 545.
47 *Iqbal*, 556 U.S. at 679.
48 *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (per curiam) (unpublished opinion) (citations omitted).

sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to dismiss.[49] "'[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment . . . .'"[50]

## LAW AND ANALYSIS

### I. Plaintiffs fail to state a claim against Repwest.

The Court will dismiss Plaintiffs' claims against Repwest. Plaintiffs fail to state a claim against Repwest because they do not allege facts that provide the defendant with notice of the grounds upon which Plaintiffs' claims rest. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[51] Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"[52] or "naked assertion[s]"[53] devoid of "further factual enhancement"[54] are not sufficient. The complaint must provide the defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."[55]

Repwest argues the Court should dismiss Plaintiffs' claims against it because Plaintiffs do not allege facts or particulars to support the claim that Repwest improperly provided claim information about Chad Lightfoot to the Louisiana State Police.[56] Repwest argues that across 55 pages and 338 paragraphs, the Complaint says "virtually nothing

---

[49] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).
[50] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022) (quoting *Bilyeu v. Johanson Berenson LLP*, 2010 WL 3896415, at *9 (W.D. La. Sep. 30, 2010)).
[51] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).
[52] *Iqbal*, 556 U.S. at 678 (citations omitted).
[53] *Twombly*, 550 U.S. at 557.
[54] *Id.*
[55] *Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014).
[56] R. Doc. 69-1 at p. 8.

about Repwest except for asserting a vague allegation that Repwest improperly supplied unidentified claim data to an unidentified person at the Louisiana State Police at an unidentified time and place."[57] Repwest further argues that the pleading does not supply information sufficient for it to be able to evaluate and respond to Plaintiffs' claim.[58]

Plaintiffs allege that RepWest claim data and claim materials were used in connection with the Louisiana State Police investigation of Mr. Lightfoot and "in framing Mr. Lightfoot as a ringleader while other similarly situated participants were treated more favorably."[59] Plaintiffs argue they are suing Repwest "to the extent discovery confirms its role in supplying, ratifying, benefiting from, or permitting use of that information."[60] Plaintiffs argue that at a minimum further discovery is warranted.[61]

The factual allegations in Plaintiffs' Second Amended Complaint fail to identify with specificity the acts alleged to have been committed by Repwest. Plaintiffs mention Repwest only in three paragraphs throughout the entire complaint. Plaintiffs first reference Repwest is in the complaint's listing of defendants, where Plaintiffs allege:

> Defendant RepWest Insurance Company is an insurance company authorized to conduct business in Louisiana. Plaintiffs allege, on information and belief, that RepWest claim data and claim materials were used in connection with the LSP staged-accident investigation and in framing Mr. Lightfoot as a ringleader while other similarly situated participants were treated more favorably.[62]

Plaintiffs further allege in the next paragraph:

> Plaintiffs further allege, on information and belief, that RepWest participated in, supplied, or permitted use of claim

[57] *Id.* at p.9.
[58] *Id.*
[59] R. Doc. 60 at ¶ 58.
[60] *Id.* at ¶ 59.
[61] *Id.* at pp. 4-5.
[62] *Id.* at ¶ 58.

> information in the broader insurance-fraud investigation that formed part of the criminal narrative against Mr. Lightfoot. RepWest is sued to the extent discovery confirms its role in supplying, ratifying, benefiting from, or permitting the use of that information.[63]

Plaintiffs mention Repwest only one other time in the entire complaint, briefly stating in the factual allegations section:

> Multiple insurance carriers were involved in claim handling arising from the accident, including Progressive-related entities, Liberty Mutual, **RepWest,** and other insurers or related claim-data entities.[64]

Plaintiffs' allegations do not provide notice to Repwest of the claims against it and grounds on which Plaintiffs' claims rest. Plaintiffs' allegations do not allow the Court or Defendant to discern what wrongful conduct Plaintiffs allege Repwest committed. Plaintiffs do not include any allegations showing how Repwest perpetuated any false narrative against Lightfoot, let alone what information Repwest allegedly provided to its co-Defendants and allowed them to use. Plaintiffs allege the information from Repwest was used "in framing Mr. Lightfoot as a ringleader,"[65] but they do not allege what the information was, who it was given to, how Repwest supplied or ratified this information, or how this information was used to frame Mr. Lightfoot. Plaintiffs' vague allegations fail to identify acts of misconduct by Repwest and, as a result, do not provide notice of the grounds on which their claims rest.[66]

Moreover, Plaintiffs fail to state a claim against Repwest because they do not bring any claim specifically against Repwest. The Federal Rules of Civil Procedure entitle "each

---

[63] *Id.* at ¶ 59.
[64] *Id.* at ¶ 87 (bolded emphasis added).
[65] *Id.* at ¶ 58.
[66] *Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014).

defendant . . . to know what he or she did that is asserted to be wrongful."[67] Mere "conclusory allegations against [d]efendants as a group" that "fail[ ] to allege the personal involvement of any defendant" are insufficient to put Defendants on notice of their alleged wrongdoing.[68] A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged."[69] When a number of defendants are named in a complaint, a plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct."[70] "While referring to a collective group of defendants is not a fatal pleading deficiency, "[e]ach defendant is [still] entitled to know what he or she did that is asserted to be wrongful."[71] The critical inquiry is whether the complaint, with its group allegations, provides each defendant with adequate notice of the plaintiff's claims and the grounds upon which the claim rests.[72] A complaint that contains impermissibly vague group pleading will be dismissed.[73] For example, in *Cain v. City of New Orleans*, the plaintiffs brought 42 U.S.C. § 1983 claims against the City of New Orleans, the Sheriff, and various court officials for their involvement in the plaintiffs' allegedly unconstitutional criminal prosecution.[74] In their complaint, the plaintiffs directed their allegations towards "'defendants' as a group" and failed to identify specific

---

[67] *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849478, at *5 (E.D. La. May 13, 2016).
[68] *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (dismissing plaintiffs' claims without prejudice for failure to provide each defendant with notice of its alleged participation in the racketeering enterprise).
[69] *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution); *Aruanno v. Main*, 467 F. App'x 134, 137-38 (3d Cir. 2012) (dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants).
[70] *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).
[71] *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021).
[72] *Valadez v. City of San Antonio*, No. SA21CV0002JKPRBF, 2022 WL 1608016, at *5 (W.D. Tex. May 20, 2022)
[73] *Id.*
[74] No. CV 15-4479, 2016 WL 2849478, at *3 (E.D. La. May 13, 2016).

acts of misconduct by specific defendants.[75] This district court found such allegations insufficient to state a plausible claim for relief because the allegations "largely prevent[ed] the Court from discerning which defendants [were] allegedly responsible for which allegedly unlawful actions."[76] Accordingly, the court dismissed the plaintiffs' claims that "lump[ed] all defendants together and assert[ed] identical allegations as to each, without distinction."[77]

Defendants are entitled to factual pleadings that alert each of them of the wrongful conduct they allegedly committed.[78] Plaintiffs fail to specifically name Repwest in any of their twenty counts. Instead, Plaintiffs direct their claims against groups of defendants, for example,

> "Defendants whose direct conduct or joint action caused Mr. Lightfoot's arrest without probable cause;"[79]
>
> "Defendants whose direct conduct or joint action initiated or continued criminal proceedings unsupported by probable cause;"[80] and
>
> "[S]tate actors and joint actors whose alleged unlawful conduct removed Mr. Lightfoot from the family home and directly interfered with protected family relationships."[81]

In each count of Plaintiffs' second amended complaint, they refer to various defendants as a group and fail to identify specific acts of misconduct by Repwest. Based on these allegations, Repwest cannot discern what unlawful actions it allegedly committed. Such vague, collective allegations do not state a plausible claim for relief.[82]

---

[75] *Id.* at *5.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] R. Doc. 60 at p. 36 (Count I).
[80] *Id.* at p. 37 (Count II).
[81] *Id.* at p. 41 (Count VI).
[82] *See Cain*, 2016 WL 2849478, at *5.

## II. The majority of Plaintiffs' claims arising under federal law—Counts I, II (Wrongful Detention), V, VI, VII, VIII, and IX—have prescribed.

Section I, *supra*, details why the claims against Repwest will be dismissed due to failure to state sufficient factual allegations and impermissible group pleading. Those reasons are sufficient in themselves. Nonetheless, an additional standalone barrier exists as to Plaintiffs' claims: prescription. The majority of Plaintiffs' claims under both federal and state law are prescribed. While it is difficult to ascertain under what causes of action Plaintiff sues Repwest, if any, the Court will analyze prescription for all possible causes of action listed in the complaint for the sake of completeness. The Court will first examine claims under federal law that have prescribed: Counts I, II (Wrongful Detention)[83], V, VI, VII, VIII, IX. The following section III, *infra*, discusses claims under Louisiana law that have prescribed: Counts XII, XIII, XV, XVI, XVII.

### A. Plaintiffs' 42 U.S.C. § 1983 False Arrest, False Imprisonment, and Malicious Detention Claims under Counts I and II are prescribed.

For 42 U.S.C. § 1983 claims, federal courts in Louisiana apply the relevant Louisiana prescription rules for delictual actions.[84] Prior to July 1, 2024, delictual actions in Louisiana were "subject to a liberative prescription of one year."[85] Liberative prescription for actions prior to July 1, 2024 "commence[d] to run from the day that

[83] The malicious prosecution component of Count II, unlike the wrongful detention component, has not prescribed. Nonetheless, the malicious prosecution claim suffers from the same defects outlined in Section I *supra* and will be dismissed.
[84] *See Mitchell v. Crescent River Port Pilots Ass'n*, 515 F. Supp. 2d 666, 674-75 (E.D. La. 2007) (collecting cases), *aff'd*, 265 F. App'x 363 (5th Cir. 2008).
[85] *Dowd v. Helena Emergency Physicians, PLLC*, 2023-00132 p. 1 (La. 4/25/23), 359 So. 3d 969, 970-71.

injury or damage is sustained."[86] "Jurisprudence has interpreted this rule to mean that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based."[87] For false arrest and false imprisonment claims, prescription commences on the date of arrest (and not from the date of release).[88] In this case, Plaintiff's alleged arrest date was on January 6, 2015.[89] Accordingly, Count I alleging false arrest and false arrest is prescribed. Similarly, the Count II claim alleging false detention[90] also is prescribed.

### B. Plaintiffs' 42 U.S.C. § 1983 Selective Prosecution Claim under Count V are prescribed.

The United States Court of Appeals for the Fifth Circuit has held that selective prosecution claims under 42 U.S.C. 1983 are analogous to abuse of process claims and that prescription commences on the date of arrest.[91] Given that Louisiana prescription rules for delictual actions imposed a one-year liberative prescription period, the selective prosecution claim prescribed one year after January 6, 2015. Given that this action was filed on October 20, 2025,[92] over ten years later, Plaintiffs' selective prosecution claim under Count V is prescribed.

### C. Plaintiffs' 42. U.S.C. § 1983 familial integrity claim under Count VI is prescribed.

For 42 U.S.C. § 1983 claims, federal courts in Louisiana apply the relevant Louisiana prescription rules for delictual actions.[93] The Louisiana Supreme Court has

---

[86] *Id.*
[87] *Id.*
[88] *Eaglin v. Eunice Police Dep't,* 17-1875, p. 8 (La. 6/27/18); 319 So. 3d 225, 230.
[89] R. Doc. 60 at ¶110.
[90] Lieutenant Arcana does not argue that the part of Count II alleging malicious prosecution has prescribed. R. Doc. 88 at p.2.
[91] *Aly v. City of Lake Jackson*, 453 F. App'x 538, 540 (5th Cir. 2011).
[92] *See* R. Doc. 87 at p.11.
[93] *See Mitchell v. Crescent River Port Pilots Ass'n*, 515 F. Supp. 2d 666, 674-75 (E.D. La. 2007) (collecting cases), *aff'd*, 265 F. App'x 363 (5th Cir. 2008).

declared that a cause of action for loss of consortium (the Louisiana state law equivalent of a familial integrity claim), does not accrue "until the party suffers the actual loss of consortium, which has been held to occur at the time an injured party's condition deteriorates to such an extent that his family is actually deprived of his consortium."[94] Plaintiff's state custody ended in 2018,[95] and thus prescription accrued one year later in 2019.[96] Accordingly, Plaintiffs' familial integrity claim under 42 U.S.C. § 1983 is prescribed.

### D. Plaintiffs' 42 U.S.C. § 1981 claim for race discrimination under Count VII is prescribed.

For 42 U.S.C. § 1981 claims, federal courts in Louisiana apply the relevant Louisiana prescription rules for delictual actions.[97] Prior to July 1, 2024, delictual actions in Louisiana were "subject to a liberative prescription of one year."[98] A § 1981 claim accrues "when the plaintiff knows or reasonably should know that the discriminatory act has occurred."[99] In this case, Plaintiff Mr. Lightfoot filed several complaints with the Louisiana State Police in 2018 regarding the Louisiana State Police's handling of the investigation in Lightfoot's case file.[100] Repwest is being sued to the extent RepWest provided information or participated in that investigation.[101] Since Plaintiff filed a complaint in 2018 indicating his knowledge of the alleged wrongdoing in the investigation, prescription accrued one year later in 2019. Plaintiffs' 42 U.S.C. § 1981

---

[94] *Landry v. Avondale Indus., Inc.*, 03-0719, p. 4 (La. 12/3/03); 864 So. 2d 117, 122 (collecting cases).
[95] R. Doc. 17-4 at p. 6.
[96] La. Civ. Code art. 3492 (Repealed by Acts 2024, No. 423, § 2, eff. July 1, 2024).
[97] *See Mitchell v. Crescent River Port Pilots Ass'n*, 515 F. Supp. 2d 666, 674-75 (E.D. La. 2007) (collecting cases), *aff'd*, 265 F. App'x 363 (5th Cir. 2008).
[98] *Dowd*, 2023-00132 p. 1 (La. 4/25/23), 359 So. 3d 969, 970-71.
[99] *McWilliams v. Escambia Cty. Sch. Bd.*, 658 F.2d 326, 330 (5th Cir. 1981) (citations omitted).
[100] R. Doc. 60 at ¶¶ 143-53.
[101] *Id.* at ¶¶ 58-59.

claim for race discrimination under Count VII is prescribed.

### E. Plaintiffs' 42 U.S.C. §§ 1985 and 1986 claims for Civil Rights Conspiracy and Neglect to Prevent Civil Rights Conspiracy under Counts VIII-IX is prescribed.

For 42 U.S.C. § 1985 claims, federal courts in Louisiana apply the relevant Louisiana prescription rules for delictual actions.[102] For 42 U.S.C. § 1986 claims, Section 1986 specifically states that actions brought under that provision must be commenced within one year of when the cause of action has accrued.[103] The United States Court of Appeals for the Fifth Circuit has held that a cause of action for a 42 U.S.C. § 1985 civil conspiracy claim accrues as soon as the plaintiff knows or should have known of the overt acts involved in the alleged conspiracy.[104] Again, Mr. Lightfoot filed several complaints with the Louisiana State Police in 2018 regarding the Louisiana State Police's handling of Lightfoot's case file.[105] Accordingly, prescription accrued one year later in 2019. Plaintiffs' 42 U.S.C. § 1985 claim for race discrimination under Count VII is prescribed. Likewise, Section 1986 provides for liability against third parties based on their knowledge of Section 1985 violations. Plaintiffs knew or should have known of the alleged section 1986 violation around the same time they knew or should have known of the section 1985 violation. Plaintiffs' 42 U.S.C. § 1986 claim also is prescribed.

## III. The majority of Plaintiffs' Louisiana tort claims—Counts XII, XIII, XIV, XV, XVI, and XVII are prescribed.

---

[102] *See Mitchell v. Crescent River Port Pilots Ass'n*, 515 F. Supp. 2d 666, 674-75 (E.D. La. 2007) (collecting cases), *aff'd*, 265 F. App'x 363 (5th Cir. 2008).
[103] 42 U.S.C. § 1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").
[104] *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987).
[105] R. Doc. 60 at ¶¶ 143-53.

Prior to July 1, 2024, delictual actions in Louisiana were "subject to a liberative prescription of one year."[106] Liberative prescription for actions prior to July 1, 2024 "commence[d] to run from the day that injury or damage is sustained."[107] "Jurisprudence has interpreted this rule to mean that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based."[108] The causes of action for the vast majority of Plaintiffs' Louisiana tort claims[109] accrued well before filing of the lawsuit in October 2025, and were prescribed long ago.

### A. Louisiana case law establishes that Plaintiffs' abuse of process claim is prescribed.

Counts XII and XVII, both of which are based on the Louisiana tort of abuse of process, name specifically only "private attorney" and "insurance" defendants."[110] Count XII also is brought against "other Defendants who misused civil or criminal process for ulterior purposes," but this allegation is not sufficient to give Repwest notice of its alleged wrongdoing.[111] Nonetheless, to the extent Plaintiffs attempt to assert abuse of process claims against Repwest, these claims are prescribed.

Louisiana recognizes abuse of process claims under La. Civ. Code art. 2315.[112] To state an abuse of process claim, a plaintiff must allege "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding."[113] Abuse of process is a tort claim that, at the time the

---

[106] *Dowd*, 2023-00132 p. 1 (La. 4/25/23), 359 So. 3d 969, 970-71.
[107] *Id.*
[108] *Id.*
[109] With the exception of Count XI "Louisiana Malicious Prosecution." R. Doc. 60 at 45-46.
[110] R. Doc. 60 at ¶¶ 291 and 324.
[111] As explained in Section III, *supra*.
[112] *Waguespack, Seago & Carmichael (A PLC) v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00), 768 So. 2d 287, 290.
[113] *Id.* (citing *Succession of Cutrer v. Curtis,* 341 So.2d 1209, 1213-14 (La. App. 1 Cir.1976)).

incidents alleged herein occurred, was governed by La. C.C. art. 3492, which provided a prescriptive period of one year from the date of injury or damage.[114] The Court must determine whether the prescriptive period for this claim begins to run from the date a defendant allegedly used the improper legal process or from the date the resulting criminal proceeding was dismissed.

In *Rieth v. Munguia*, the Louisiana Court of Appeal for the Fourth Circuit analyzed whether an abuse of process claim was prescribed.[115] In that case, the defendant filed a reconventional demand alleging the plaintiff committed abuse of process by filing the state court petition relating to a property dispute between the parties.[116] The court found the abuse of process claim was prescribed because the defendant filed the reconventional demand making the abuse of process claim more than a year after the plaintiff filed the state court petition that allegedly constituted abuse of process.[117] Importantly, the Louisiana appellate court held "the continuing tort doctrine does not apply to extend the prescriptive date . . ." and that "[t]he act of filing the petition by [plaintiff] was a singular act; any damages that occurred may have been continuing, but the allegedly tortious act occurred when the petition was filed."[118] Similarly, in *No Drama, LLC v. Caluda*, the Louisiana Court of Appeal for the Fifth Circuit found the prescriptive period for an abuse of process claim began to run on the date the defendant filed the petition the plaintiff

---

[114] *Morice v. Yorkshire Ct. Condo. Ass'n, Inc.*, 23-118, p. 6 (La. App. 5 Cir. 11/29/23), 377 So.3d 848, 853 (stating that "claims for abuse of process raise delictual claims that are subject to a prescriptive period of one year."); Louisiana law regarding prescription was amended effective July 1, 2024 to extend the one-year prescriptive period to a two-year prescriptive period for delictual actions. *See* La. C.C. art. 3493.1. However, these changes apply prospectively only to delictual action arising after July 1, 2024. *See* 2024 La. Acts, No. 423, §§ 1 and 2 (providing that the extended period "shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act" and that "[t]his Act shall become effective on July 1, 2024").
[115] *Rieth v. Munguia*, 23-0547, p. 11 (La. App. 4 Cir. 5/30/24), 391 So. 3d 39, 43-47.
[116] *Id.*
[117] *Id.* at 48.
[118] *Id.*

alleged constituted abuse of process.[119] The court held that "[a]lthough plaintiff alleges to have continuously sustained damages to its reputation and its finances until the dismissal of the underlying suit, the operating cause, the filing of the lawsuit, is not a continuous tort."[120] The prescriptive period for an abuse of process claim does not begin at a later date even when the plaintiff alleges he has continuously sustained damage.[121] Moreover, the prescriptive period does not begin to run at later date just because the plaintiff allegedly suffered damages from the abuse of process after the abuse of process occurred.[122]

The prescriptive period for Plaintiffs' abuse of process claims began when the allegedly "willful act[s] in the use of the process not proper in the regular prosecution of the proceeding" occurred.[123] It is clear that all of the potential acts of abuse of process by Repwest could have occurred only well over a year prior to Plaintiffs filing the present action. Plaintiffs allege: on January 23, 2015, "private attorney Defendants" obtained a civil judgment against Mr. Lightfoot in the underling civil litigation;[124] and on August 22, 2016 "attorney and insurance Defendants recorded or caused to be recorded" the judgment in the underlying civil litigation as a judicial mortgage against Lightfoot's homestead.[125] Mr. Lightfoot's criminal prosecution was allegedly initiated by NOPD Detective Frank Denton and LSP Lieutenant Alan Arcana.[126] Even if the Court somehow found that the initiation of Mr. Lightfoot's criminal prosecution constituted abuse of

---

[119] 177 So.3d 747, 752, (La. App. 5 Cir. 10/14/15).
[120] *Id.*
[121] *Id.*
[122] *Id.*
[123] *See Waguespack, Seago & Carmichael (A PLC) v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00), 768 So. 2d 287, 290.
[124] R. Doc. 60 at ¶ 124.
[125] *Id.* at ¶ 126.
[126] *Id.* at ¶¶ 101, 116.

process on the part of Repwest, Mr. Lightfoot was arrested in 2015, over a decade before the present action was filed. Mr. Lightfoot's state custody terminated in 2018,[127] and the last time any Louisiana State Police defendant in this suit testified regarding Mr. Lightfoot's arrest was the 2022 grand jury testimony by Lieutenant Arcana.[128] These events all occurred well over a year before the 2025 filing of this action.

**B. All remaining Louisiana tort law claims are prescribed under the 1-year liberative prescription rule.**

Count XIII Louisiana Fraud/Intentional Misrepresentation, Count XIV Louisiana Intentional Infliction of Emotional Distress, Count XV Louisiana Loss of Consortium, Service, and Society, and Count XVI Louisiana Negligence/Gross Fault/Civil Fault also are prescribed. These Louisiana tort claims, at the time the incidents alleged herein occurred, were governed by La. C.C. art. 3492, which provided a prescriptive period of one year from the date of injury or damage.[129] While these counts suffer from the fatal group pleading and fact-deficient defects outlined in Section I *supra*, and as such it is difficult for the Court to determine with certainty the last alleged wrongdoing on behalf of Repwest, the last conceivable dates appear are more than a year before 2025.

**C. Plaintiffs have had multiple chances to amend their complaint and will not be given another opportunity.**

Plaintiffs ask the Court for leave to amend their complaint in the event the Court "concludes additional Repwest-specific detail should be pleaded."[130] Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so

---

[127] R. Doc. 17-4 at p. 6.
[128] R. Doc. 60 at ¶ 121.
[129] As discussed *supra* Section I, the Louisiana tort claims in count XI Louisiana Malicious Prosecution and Count XIV Louisiana Intentional Infliction of Mental Distress are dismissed for failure to state a claim and for impermissible group pleading.
[130] R. Doc. 77 at p. 20.

requires." A "court must have a 'substantial reason' to deny a request for leave to amend" and "may consider factors such as whether there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'"[131] "The district court is entrusted with the discretion to grant or deny a motion to amend."[132]

The Court will not grant Plaintiffs leave to amend. Plaintiffs have filed five complaints/petitions during this litigation; they have already amended their complaint four times—twice in state court and twice before this court.[133] Plaintiffs attempted to file an amended complaint in response to Repwest's first motions to dismiss.[134] However, Plaintiffs proposed amended complaint failed to remedy the deficiencies raised in these motions to dismiss. Despite this failure, the Court allowed Plaintiffs to file another complaint on June 8, 2026 that did address the arguments raised in the Defendants' motions to dismiss.[135] Despite these ample opportunities, as discussed *supra*, Plaintiffs have still failed to state plausible claims for relief against Repwest. The Court will not provide Plaintiffs with unlimited opportunities to try to state a claim against the Repwest. Based on Plaintiffs' "repeated failure[s] to cure deficiencies by amendments previously allowed,"[136] the Court finds further amendment is not warranted. Moreover, any

---

[131] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (citing *Jacobsen v. Osborne,* 133 F.3d 315, 318 (5th Cir. 1998)).
[132] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)).
[133] R. Docs. 1-3; 1-4; 52-1, 60. This includes the amended complaint Plaintiffs attempted to file on April 15, 2026.
[134] R. Doc. 50.
[135] R. Doc. 53.
[136] *Herrmann Holdings Ltd.*, 302 F.3d at 566.

amendment to Plaintiffs' claims against Repwest would be futile, as such claims have prescribed. As a result, the Court will not grant Plaintiffs leave to amend their complaint.

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss filed by Repwest Insurance Company is **GRANTED.**[137]

**IT IS FURTHER ORDERED** that Plaintiffs' causes of action against Repwest Insurance Company are **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 9th day of October, 2026.**

Susie Morgan

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

137 R. Doc. 69.