**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHAD LIGHTFOOT, ET AL.,** **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-434** |
| **PROGRESSIVE DIRECT INSURANCE COMPANY, ET AL.,** **Defendants** | **SECTION: "E" (1)** |

**ORDER AND REASONS**

Before the Court is a motion to dismiss for failure to state a claim filed by Eric Cusimano, Craig W. Famularo, Andre C. Gaudin, Jr, and Jason Williams (sometimes referred to collectively as the "OPDA Defendants").[1] Plaintiffs Chad Lightfoot, Geralyn Hawkins, and their minor children ("Plaintiffs") filed an opposition.[2] The OPDA Defendants filed a reply.[3]

**BACKGROUND**[4]

This case arises out of a vehicle accident in Orleans Parish and the subsequent criminal prosecution of Plaintiff Chad Lightfoot for insurance fraud.[5] Plaintiffs allege that, on August 29, 2011, Mr. Lightfoot was involved in a vehicle accident in Orleans Parish.[6] Mr. Lightfoot filed insurance claims with multiple insurance carriers, including Liberty, Progressive, and others.[7] Plaintiffs allege the insurance claim was not "resolve[d]. . . to Mr. Lightfoot's satisfaction" and, as a result, in 2012, he brought a personal-injury lawsuit

[1] R. Doc. 84.
[2] R. Doc. 95.
[3] R. Doc. 96.
[4] These factual allegations are based on the Plaintiffs' Second Amended Complaint. R. Doc. 60.
[5] *Id.*
[6] *Id.* at ¶ 85.
[7] Id. at¶ 87. Apparently, these are Chad Lightfoot's underinsured motorist insurance carriers.

in Orleans Parish Civil District Court against Progressive and other related defendants ("the underlying civil action").[8]

Plaintiffs allege that, on or about September 19, 2014, two of the attorneys representing Progressive in the underlying civil action, Megan Kiefer and Ignatz Kiefer assaulted Mr. Lightfoot inside the Orleans Parish Courthouse in retaliation for bringing the underlying civil action.[9] Plaintiffs further allege that, in December 2014, Megan Kiefer prepared and swore to a false affidavit she submitted to the New Orleans Police Department stating that Mr. Lightfoot fraudulently obtained a $50,000 payment from Progressive Insurance Company in connection with the August 29, 2011 accident.[10] Plaintiffs allege the affidavit included Megan Kiefer's statement that, in obtaining the $50,000 payment, Mr. Lightfoot committed perjury, insurance fraud, and filed false public records.[11] Plaintiffs allege these statements were false and Progressive's own records confirmed that Mr. Lightfoot never received a $50,000 payment.[12] Plaintiffs allege the Insurance Attorneys representing the Insurance Defendants used this false affidavit to obtain a judgment in the underlying civil action against Mr. Lightfoot and in favor of their clients.[13] Plaintiffs further allege that, on August 22, 2016, this judgment was recorded as a judicial mortgage against Mr. Lightfoot's homestead, which "clouded Mr. Lightfoot's title and exerted improper financial pressure . . . ."[14] Plaintiffs allege that Kristin L. Beckman, counsel for Liberty, "participated in preparing, filing, recording, or enforcing civil judgment and judicial-mortgage materials . . ." and Adam Massey, counsel

---

[8] *Id.* at ¶¶ 87-88.
[9] *Id.* at ¶ 90. Plaintiffs do not bring a cause of action for damages resulting from this physical altercation.
[10] *Id.* at ¶¶ 95-96.
[11] *Id.* at ¶ 96.
[12] *Id.* at ¶¶ 97-98.
[13] *Id.* at ¶ 124.
[14] *Id.* at ¶¶ 125-27.

for Progressive, "participated in preparing, filing, recording, or enforcing civil judgment and judicial-mortgage materials . . . ."[15]

Plaintiffs allege New Orleans Police Department Detective Frank Denton, without conducting further investigation into the affidavit's validity, relied on Megan Kiefer's false affidavit to obtain an arrest warrant for Mr. Lightfoot.[16] Plaintiffs allege that, on January 6, 2015, Mr. Lightfoot was arrested pursuant to this warrant.[17] Plaintiffs further allege that the Louisiana State Police Insurance Fraud Division began an investigation into Lightfoot's alleged insurance fraud scheme.[18] Plaintiffs allege that Defendant State Police Lieutenant Alan Arcana stated in a police report that Mr. Lightfoot received $50,000 in payments from Progressive, which caused the State of Louisiana to bring criminal charges against him.[19] Plaintiff was charged with theft over $50,000, automobile insurance fraud, and perjury.[20] Plaintiffs allege Lieutenant Arcana testified that Progressive insurance investigator Glenn Pardiane represented to him that Mr. Lightfoot received a $50,000 payment.[21] Plaintiffs allege that, during the criminal proceedings, it was discovered there was no record of a $50,000 insurance payout to Mr. Lightfoot but that, despite this lack of evidence, the OPDA Defendants criminally prosecuted Mr. Lightfoot for insurance fraud.[22] Plaintiffs allege the criminal charges against Mr. Lightfoot were dismissed on October 15, 2024.[23]

[15] *Id.* at ¶¶ 43, 45.
[16] *Id.* at ¶ 107.
[17] *Id.* at ¶ 110.
[18] *Id.* at ¶ 115.
[19] *Id.* at ¶¶ 117-18.
[20] *Id.* at ¶ 107.
[21] *Id.* at ¶ 121.
[22] *Id.* at ¶ 136.
[23] *Id.* at ¶ 142.

Mr. Lightfoot and his spouse, Geralyn Hawkins, filed this suit *pro se* on October 20, 2025 in Orleans Parish Civil District Court.[24] In their original petition, Mr. Lightfoot and Ms. Hawkins brought a single claim against "unknown named Defendants" under La. R.S. 15:572.8, which provides compensation to persons wrongfully convicted and imprisoned.[25]

On November 10, 2025, Mr. Lightfoot and Ms. Hawkins filed a First Amended Petition, adding their minor children as named Plaintiffs and bringing eight counts against various defendants for actions related to Mr. Lightfoot's criminal prosecution and the civil judgment entered against him and recorded as a judicial mortgage.[26] These defendants included Craig W. Famularo and Andre C. Gaudin, Jr, but not Jason Williams and Eric Cusimano.[27]

On January 20, 2026, Plaintiffs filed a Second Amended Petition in state court.[28] While this petition did not alter or amend any of the causes of action Plaintiffs attempted to plead in their First Amended petition, it removed Plaintiffs' minor children as parties.[29]

Robert Hodges and Alan Arcana removed the matter to this Court on February 27, 2026.[30] Following removal, multiple defendants filed motions to dismiss, including Famularo and Gaudin.[31] In their motion to dismiss, Famularo and Gaudin argued that they were absolutely immune from any civil claims related to their prosecution of Mr. Lightfoot, that Plaintiffs' petition failed to allege facts showing they prosecuted Mr.

[24] R. Doc. 1-2.
[25] *Id.* at pp. 1-2.
[26] R. Doc. 1-3.
[27] *Id.* at p. 6.
[28] R. Doc. 1-4.
[29] *See id.* at p. 1.
[30] R. Doc. 1.
[31] R. Doc. 32.

Lightfoot in bad faith, and Plaintiffs did not allege what material exculpatory evidence either of them withheld.[32]

On April 15, 2026, in response to the motions to dismiss, Plaintiffs moved, *pro se*, to file a First Amended Complaint in federal court in order to provide additional factual details, clarify their claims for relief, and "narrow[] certain theories to address issues raised or anticipated in Defendants' Rule 12(b)(6) motions."[33] The Plaintiffs attached their proposed amended complaint to their motion.[34] On April 22, 2026, the Court granted Plaintiffs' leave to file an amended complaint, but advised Plaintiffs to revise their proposed restated and amended complaint, as the proposed version failed to address the arguments Defendants made in their motions to dismiss.[35] The Court ordered Plaintiffs to file a revised and restated amended complaint, addressing "fully and completely, all arguments raised in the Defendants' motions to dismiss," on or before on May 6, 2026.[36]

On May 6, 2026, rather than file their amended and restated complaint, Plaintiffs simultaneously moved to enroll counsel of record and for an extension of time to file their restated and amended complaint.[37] The Court granted Plaintiffs' motion and ordered Plaintiffs to file their restated and amended complaint on or before June 8, 2026.[38]

On June 8, 2026, Plaintiffs filed their Second Amended Complaint[39]—their fourth petition/complaint filed in the course of this litigation[40]—in response to the Court's order

---

[32] R. Doc. 32-1 at pp. 7-11.
[33] R. Doc. 52 at p. 1.
[34] R. Doc. 52-1.
[35] R. Doc. 53 at p. 3.
[36] *Id.*
[37] R. Doc. 56.
[38] R. Doc. 59.
[39] R. Doc. 60.
[40] Plaintiffs prepared a restated and amended complaint and requested leave to file it on April 15, 2026, but the Court ordered them to further revise it to address the arguments made in the pending motions to dismiss. R. Docs. 52, 53.

that the amended complaint address fully and completely all arguments raised in the defendants' motions to dismiss. In Plaintiffs' Second Amended Complaint, Plaintiffs bring claims against various defendants they allege were associated with Mr. Lightfoot's criminal prosecution. The Second Amended Complaint again asserts claims against, among other defendants, Famularo and Gaudin and adds Jason Williams and Eric Cusimano as defendants. Plaintiffs assert claims against Famularo, Gaudin, and Cusimano in their individual capacities as assistant district attorneys and against Williams in his individual and official capacity as the District Attorney of Orleans Parish. While Plaintiffs' previous complaints brought only eight counts against the defendants for violating La. C.C.P art. 2315 and various constitutional violations, their Second Amended Complaint asserts twenty counts against various defendants for multiple state law tort claims and constitutional violations.[41]

On July 20, 2026, the OPDA Defendants filed a motion to dismiss for failure to state a claim.[42] In their motion, the OPDA Defendants argue that all claims asserted against them should be dismissed because all of their alleged conduct occurred in their roles as prosecutors and, as a result, they are absolutely immune from Plaintiffs' claims.[43] The OPDA Defendants argue that, even if they are not immune from Plaintiffs' claims of malicious prosecution and failure to disclose exculpatory evidence, Plaintiffs fail to allege sufficient facts to plausibly state either of the claims.[44] The OPDA Defendants further argue that Plaintiffs resort to impermissible group pleading in many of their counts, as

[41] In Plaintiffs' Second Amended Complaint, they added Eric Cusimano, Jason Williams, and Sgt. Patrick Bradley of the Louisiana State Police as Defendants.
[42] R. Doc. 84.
[43] R. Doc. 84-1 at pp. 6-8. The OPDA Defendants do not specifically argue that the claims asserted against Williams in his official capacity should be dismissed.
[44] *Id.* at pp. 9-12.

they name defendants as a group without alleging particular acts committed by specific defendants.[45]

Plaintiffs argue they have made sufficient allegations against the OPDA Defendants regarding their conduct that harmed Plaintiffs.[46] Plaintiffs further argue the OPDA Defendants are not absolutely immune from Plaintiffs' claims because Plaintiffs seek to hold the OPDA Defendants liable for conduct that occurred outside of the judicial process and outside of their roles as prosecutors.[47] Plaintiffs argue they state plausible claims for relief against the OPDA Defendants in their individual capacities and against Williams in his official capacity, as they allege the OPDA Defendants had access to exculpatory information yet continued to prosecute Mr. Lightfoot.[48]

## LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[49] A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted.[50] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[51] "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'"[52] "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[53]

---

[45] *Id.* at p. 13.
[46] R. Doc. 95 at p. 5.
[47] *Id.* at p. 18-20.
[48] *Id.* at p. 43-44.
[49] FED. R. CIV. P. 8(a)(2).
[50] FED. R. CIV. P. 12(b)(6).
[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[52] *Id.* (quoting *Twombly*, 550 U.S. at 555).
[53] *Id.* (quoting *Twombly*, 550 U.S. at 557).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[54] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[55] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[56] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"[57] Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"[58] or "naked assertion[s]"[59] devoid of "further factual enhancement"[60] are not sufficient.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[61] However, "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[62] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires

---

[54] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[55] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[56] *Id.* (citing *Twombly*, 550 U.S. at 556).
[57] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[58] *Iqbal*, 556 U.S. at 678 (citations omitted).
[59] *Twombly*, 550 U.S. at 557.
[60] *Id.*
[61] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).
[62] *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 545.

the reviewing court to draw on its judicial experience and common sense."[63] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[64] Whether a plaintiff "will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to dismiss.[65] "'[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment . . . .'"[66]

## LAW AND ANALYSIS

### I. The OPDA Defendants are absolutely immune from Plaintiffs' claims brought against them in their individual capacities.

The OPDA Defendants are absolutely immune from Plaintiffs' claims brought against them in their individual capacities.

Sections 1983, 1985, and 1986 all embrace traditional notions of immunity.[67] Under these notions, prosecutors are absolutely immune from liability in their individual capacities for certain conduct.[68] The Supreme Court has developed a "functional test under which prosecutors are absolutely immune with respect to activities that are 'intimately associated with the judicial phase of the criminal process.'"[69] Louisiana has adopted an identical theory of absolute immunity "for acts or omissions that fall within the scope of the prosecutor's role as an advocate for the state and are intimately associated

[63] *Iqbal*, 556 U.S. at 679.
[64] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished opinion) (citations omitted).
[65] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).
[66] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022) (quoting *Bilyeu v. Johanson Berenson LLP*, 2010 WL 3896415, at *9 (W.D. La. Sep. 30, 2010)).
[67] *See, e.g.*, *Mylett v. Mullican*, 992 F.2d 1347, 1352 (5th Cir. 1993); *Cousins v. Small*, 325 F.3d 627, 631 (5th Cir. 2003); *Moffett v. Bryant*, No. 08–CV–1337, 2009 WL 2448146, at *6 (W.D. La. Aug. 6, 2009); *Bolling v. Hood*, No. 1:10cv189–LG–RHW, 2010 WL 5060471, at *2 (S.D. Miss. Dec. 6, 2010).
[68] *Cousins*, 325 F.3d at 631.
[69] *Id.* at 631-32 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

with the conduct of the judicial phase of the criminal process."[70] "Conduct falling within this category is not limited 'only to the act of initiation itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate for the State.'"[71] "Therefore, the central question . . . is the nature of the conduct upon which the claim is based. If the conduct is advocatory, and therefore related to the defendants' prosecutorial function, absolute immunity applies."[72] Even if the conduct is unlawful and improper, if the prosecutor is acting in his role as an advocate, he is absolutely immune for his actions. Importantly, the Fifth Circuit has held that absolute immunity applies to alleged suppression of exculpatory evidence and malicious prosecution so long as the acts occurred in an advocatory function.[73]

The factual allegations against each of the OPDA defendants are sparse. Against Craig Famularo, Plaintiff alleges:

> Defendant Craig W. Famularo, Esq. was at all relevant times an Assistant District Attorney for Orleans Parish. He is sued in his individual capacity for non-immune investigative, administrative, evidence-management, and non-advocacy conduct only.
>
> On information and belief, Famularo is alleged to have participated in investigative and administrative functions, including evidence-management, administrative file maintenance, investigative coordination outside of courtroom advocacy and the factual narrative on which charges were based. Plaintiffs do not seek damages from Famularo for protected courtroom advocacy, trial preparation as an advocate, or presentation of the State's case in court.[74]

Plaintiff asserts similar allegations against Andre Gaudin, Jr.:

> Defendant Andre C. Gaudin, Jr., Esq. was at all relevant times an Assistant District Attorney for Orleans Parish. He is sued in his individual capacity for non-immune investigative, administrative, evidence-management, and non-advocacy conduct

---

[70] *Jameson v. Montgomery*, 2022-01784 (La. 5/5/23), 366 So. 3d 1210, 1216 (internal quotations omitted); *see also Knapper v. Connick*, 96-0434 (La. 10/15/96), 681 So. 2d 944, 950.
[71] *Cousins*, 325 F.3d at 632 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993)).
[72] *Id.*
[73] *Id.* at 635.
[74] R. Doc. 60 at ¶¶ 71-72.

> only.
>
> On information and belief, Gaudin is alleged to have participated in factual development, coordinated with law-enforcement actors, misdirected LSP internal-affairs review, continued reliance on the alleged $50,000 payment narrative after the record showed that the payment did not exist, and failed to correct or disclose exculpatory information. Plaintiffs do not seek damages from Gaudin for protected courtroom advocacy.[75]

Regarding Eric Cusimano, Plaintiffs allege

> Defendant Eric Cusimano, Esq. was at all relevant times an Assistant District Attorney for Orleans Parish. He is sued in his individual capacity for non-immune investigative, administrative, evidence-management, and non-advocacy conduct only.
>
> On information and belief, Cusimano is alleged to have failed to correct known evidentiary file defects and continued administrative maintenance of a prosecution file after acknowledging that the foundational records had been misplaced or lost, but who nevertheless participated in evidence-management or administrative conduct that allowed the prosecution to continue. Plaintiffs do not seek damages from Cusimano for protected courtroom advocacy.[76]

Finally, Plaintiff sues Jason Williams in his individual and official capacity, alleging

> Defendant Jason Williams was at all relevant times the Orleans Parish District Attorney and final policymaker for the Orleans Parish District Attorney's Office with respect to administrative policies, training, supervision, evidence-management practices, and Brady compliance systems.
>
> On information and belief, Williams is sued in his individual capacity for non-immune administrative and policymaking conduct, and in official capacity only to the extent such claims are cognizable and not barred. Williams is alleged to have received sworn complaints and exhibits identifying fabricated evidence and Brady violations, yet failed to investigate, correct, dismiss, halt, or prevent continued use of the false narrative through administrative or policymaking action.[77]

The factual allegations Plaintiffs make against the OPDA Defendants relate to their failure to verify the "false payment narrative" and their continued prosecution of Mr. Lightfoot despite their knowledge that he never received a $50,000 payment from

[75] *Id.* at ¶¶ 73-74.
[76] *Id.* at ¶¶ 75-76.
[77] *Id.* at ¶¶ 77-78.

Progressive. Specifically, Plaintiffs allege:

> Despite the Progressive records and court proceedings demonstrating that the $50,000 payment did not exist, Defendants continued to maintain, repeat, rely upon, and preserve the same factual narrative in criminal proceedings, investigative files, Internal Affairs proceedings, and related state actions.
>
> Prosecutorial Defendants Famularo, Gaudin, Cusimano, and Williams possessed, received, or had access to exculpatory information showing that the alleged Progressive payment did not exist.
>
> Despite that knowledge, they failed to timely disclose, correct, retract, dismiss, or halt the prosecution.[78]

The OPDA Defendants argue the Court should dismiss all claims asserted against them in their individual capacities.[79] The OPDA Defendants argue their alleged conduct falls under their broad prosecutorial immunity.[80] The OPDA Defendants argue Plaintiffs' allegations, including investigative coordination outside of courtroom advocacy, factual development, administrative file maintenance, coordination with law-enforcement actors, and any failure to correct or disclose evidence, occurred during the judicial phase of the criminal process and, as a result, they are absolutely immune from Plaintiffs' claims.[81]

In opposition, Plaintiffs argue the OPDA Defendants are not absolutely immune from Plaintiffs' claims because Plaintiffs seek to hold the OPDA Defendants liable for conduct that occurred outside of the judicial process and outside of their roles as prosecutors.[82]

Plaintiffs seek to hold the OPDA Defendants liable in their individual capacities for

---

[78] *Id.* at ¶¶ 136-138.
[79] The OPDA Defendants do not specifically argue that the claims asserted against Williams in his official capacity should be dismissed.
[80] R. Doc. 84-1 at p. 7.
[81] *Id.* at pp. 8-9.
[82] R. Doc. 95 at pp. 18-20.

acts they committed in their advocacy roles during Mr. Lightfoot's criminal prosecution. Plaintiffs' allegations boil down to their continued prosecution of Mr. Lightfoot despite knowledge that he did not receive a $50,000 payment from Progressive. These allegations fall squarely within the conduct covered by the prosecutors' absolute immunity. Plaintiffs do not allege that the OPDA Defendants participated in the investigation of Mr. Lightfoot that led to his arrest, that they colluded with Kiefer and Pardiane to initiate Plaintiff's prosecution, or any other acts outside of their roles as advocates. Instead, Plaintiffs allege the OPDA Defendants continued to perform in their roles as advocates despite knowledge that Lightfoot did not receive the payment. Plaintiff does not specify any wrongful act committed by the OPDA Defendants other than their continued prosecution of him. In essence, Plaintiffs are suing the OPDA Defendants for performing their roles as prosecutors. The fact that Plaintiffs claim to sue the OPDA Defendants for acts committed outside of "courtroom advocacy" does not make it so. In addition, while Plaintiffs allege the OPDA Defendants' continued prosecution of Mr. Lightfoot incorporated fabricated evidence, prosecutors are immune from malicious prosecution and fabricated evidence claims as long as the alleged conduct occurred in an advocacy role.[83] As a result, Defendants are entitled to absolute immunity from Plaintiffs' claims against them in their individual capacities, and those claims will be dismissed with prejudice.

## II. Plaintiffs' claims against Jason Williams in his official capacity.

In addition to the claims Plaintiff asserts against the OPDA Defendants in their individual capacities, Plaintiffs assert claims against Jason Williams in his official capacity. While the Court has already dismissed the claims brought against the OPDA

[83] *Spikes v. Phelps*, 131 F. App'x 47, 48 (5th Cir. 2005).

Defendants, including Williams, in their individual capacities, absolute prosecutorial immunity does not bar claims against prosecutors in their official capacities.[84] Accordingly, the Court will examine the claims asserted against Williams in his official capacity.

Plaintiffs name Williams in only two of their twenty counts. While Plaintiffs do not specify whether they bring these counts against Williams in his official or individual capacities, the Court assumes Plaintiffs intended to assert these claims against Williams in both capacities and will address the claims against him in his official capacity. Plaintiff names Williams in Count II—Fourth Amendment Wrongful Prosecution/Detention Pursuant to Legal Process Unsupported by Probable Cause, stating:

> Plaintiffs reallege and incorporate all preceding paragraphs.
>
> This Count is brought by Chad Lightfoot against Defendants Megan C. Kiefer, Glenn Pardiane, Frank Denton, Alan Arcana, Sgt. Patrick Bardley, Craig W. Famularo, Andre Gaudin, Jr., Eric Cusimano, Jason Williams, the City of New Orleans under Monell, and other Defendants whose direct conduct or joint action initiated or continued criminal proceedings unsupported by probable cause.
>
> Plaintiffs plead this Count as a Fourth Amendment wrongful-prosecution and detention claim, not as a free-standing generalized malicious-prosecution tort.
>
> Defendants initiated, caused, influenced, or continued criminal proceedings against Mr. Lightfoot through false affidavits, false reports, fabricated evidence, material omissions, suppression of exculpatory evidence, and continued reliance on the false $50,000 Progressive-payment narrative.
>
> Mr. Lightfoot suffered seizures and restraints on liberty, including arrests, detentions, bond obligations, court appearances, and continuing criminal-process restrictions.
>
> The proceedings lacked probable cause because the central alleged payment did not exist.
>
> The proceedings terminated without conviction on or about October 15, 2024.

[84] *Wearry v. Perrilloux*, 391 F. Supp. 3d 620, 629 (M.D. La. 2019).

The dismissal was not inconsistent with innocence.[85]

Plaintiffs also name Williams in Count IV—Suppression of Exculpatory Evidence/Brady Violations—stating:

> Plaintiffs reallege and incorporate all preceding paragraphs.
>
> This Count is brought by Chad Lightfoot against Defendants Famularo, Gaudin, Cusimano, Williams, and any investigative actor who suppressed, concealed, misplaced, failed to disclose, or failed to correct exculpatory evidence outside protected advocacy functions.
>
> The nonexistence of the alleged $50,000 Progressive payment was favorable and exculpatory.
>
> Progressive payment records, the court-ordered subpoena response, the absence of any Progressive payment to Mr. Lightfoot, and the CUNA Mutual/lender-payment explanation were material to guilt, probable cause, impeachment, and the defense.
>
> Defendants possessed, had access to, or were on notice of this evidence and failed to timely disclose, correct, or act upon it.
>
> The suppression and concealment prejudiced Mr. Lightfoot by allowing the prosecution to continue for years despite the collapse of its factual predicate.[86]

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency.[87] To establish liability against a municipality or other local government under § 1983, a plaintiff must show: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[88] A plaintiff may meet the first requirement even when "no 'official policy' was announced or

---

[85] R. Doc. 60 at ¶¶ 217-224.
[86] *Id.* at ¶¶ 233-238.
[87] *Monell v. Dep't of Soc. Serv of City of New York*, 436 U.S. 658, 691 n. 55 (1978).
[88] *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

promulgated but the action of the policymaker itself violated a constitutional right."[89] In *Wearry v. Perrilloux*, the United States District Court for the Western District of Louisiana found that a plaintiff asserted a claim of malicious prosecution under § 1983 against a district attorney in his official capacity when the plaintiff alleged he created a scheme to fabricate evidence that resulted in the plaintiff's conviction.[90]

The determination of who is a final policymaker is a matter of state law.[91] It is well settled that a district attorney is a policymaker for purposes of § 1983 claims. As Williams is the District Attorney of Orleans Parish, he qualifies as a policymaker under § 1983. Accordingly, to state a claim against Williams in his official capacity, Plaintiffs must identify a specific act of Williams that allegedly violated Chad Lightfoot's constitutional rights. Plaintiffs have identified specific acts of Williams, as they allege he continued to prosecute Mr. Lightfoot despite receiving evidence demonstrating Plaintiff had not received the $50,000 payment.[92] As a result, the Court must analyze whether this allegation, accepted as true, violated Plaintiffs' Fourth Amendment Rights via a *Brady* violation or malicious prosecution.

### A. Plaintiffs plausibly allege a § 1983 Fourth Amendment malicious prosecution claim against Williams in his official capacity.

Plaintiffs plausibly allege a § 1983 malicious prosecution claim against Williams in his official capacity. To establish a malicious prosecution claim, a plaintiff must allege "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original

---

[89] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (quoting *Bryan County Comm'rs v. Brown*, 520 U.S. 397 (1997) (Souter, J. dissenting)).
[90] *Wearry v. Perrilloux*, 391 F. Supp. 3d 620, 628 (M.D. La. 2019).
[91] *Burge*, 187 F.3d at 468-69.
[92] R. Doc. 60 at ¶¶ 78, 137, 151.

proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages."[93]

Williams concedes that Plaintiffs have plausibly alleged four of the six elements of a § 1983 malicious prosecution claim. Williams argues Plaintiffs have not plausibly alleged elements (4)—that Williams prosecuted Lightfoot without probable cause—or (5)—that Williams acted with malice towards Plaintiffs.[94] Williams argues that Plaintiffs make only conclusory allegations that he acted with malice and reckless disregard, but fail to support any of these allegations with factual assertions.[95] Williams further argues probable cause did exist for Lightfoot's prosecution, as Mr. Lightfoot was charged with two counts of racketeering and one count of perjury due to his alleged organization of staged accidents and his fraudulent filing of an in forma pauperis affidavit in state court. Williams cites *Armstrong v. Ashley*, in which the Fifth Circuit stated that, regarding a malicious prosecution claim, "if the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward."[96]

Plaintiffs argue the Supreme Court has rejected *Armstrong* and its holding that, if probable cause exists for any charge for which a plaintiff is prosecuted, the plaintiff cannot bring a malicious prosecution claim. Plaintiff points to the Supreme Court's holding in *Chiavereni v. City of Napoleon*, in which Plaintiffs argue the Supreme Court held that one charge in a criminal proceeding does not categorically defeat a Fourth Amendment malicious-prosecution claim relating to another, baseless charge.[97] Plaintiffs further argue they plausibly allege Williams acted with malice based on their allegations that

[93] *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (citation omitted).
[94] R. Doc. 84-1 at pp. 11-12.
[95] *Id.* at p. 11.
[96] *Armstrong*, 60 F.4th at 279 n.15.
[97] R. Doc. 95 at p.34 (citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024)).

Williams continued to prosecute Lightfoot despite having evidence showing he never received the $50,000 payment.[98]

Plaintiffs plausibly state a § 1983 malicious prosecution claim against Williams in his official capacity. Defendants concede Plaintiffs alleged four of the six elements of this claim. Plaintiffs plausibly allege the first element, as they allege the commencement and continuance original criminal proceeding—Mr. Lightfoot's criminal prosecution. Plaintiffs also allege elements (2), (3), and (6), as they allege Williams himself continued this prosecution, that the charges were dismissed on October 15, 2024, and that Plaintiffs have suffered damages as a result of the prosecution. Accordingly, whether Plaintiffs have stated a plausible § 1983 malicious prosecution claim depends on whether Plaintiffs have sufficiently alleged element (4)—the absence of probable cause—and element (5)—malice.

The Court will first address whether Plaintiffs allege Williams continued to prosecute him without probable cause. To determine whether probable cause exists, courts must ask whether the party causing the prosecution honestly and reasonably "believe[d] to a 'fair probability' that a crime had been committed."[99] In addition, the presence of probable cause must continue throughout the prosecution, as "even when a detention is justified at the outset, it may become unreasonably prolonged if the reason for it lapses."[100] As Plaintiffs note, the Supreme Court has held that, in evaluating a malicious prosecution claim, courts should analyze "charge by charge" the presence of probable cause.[101] The Supreme Court specified that, when multiple charges are brought against a defendant and only one of which lacks probable cause, the valid charges do not

---

[98] *Id.* at pp. 39-40.
[99] *Reyes v. Greer*, 686 F. Supp. 3d 524, 536 (W.D. Tex. 2023) (quoting *Gordy v. Burns*, 294 F.3d 722, 728 (5th Cir. 2002)).
[100] *Chiaverini*, 602 U.S. at 563.
[101] *Id.* at 562.

"create a categorial bar" that "insulate[s] the official from a Fourth Amendment malicious-prosecution claim relating to the invalid charge."[102]

Plaintiffs have plausibly alleged that Williams lacked probable cause to continue his prosecution of Mr. Lightfoot on the charge of theft over $50,000. Probable cause must exist throughout the criminal proceedings, not merely at their initiation.[103] While Plaintiffs do not allege Williams initiated Lightfoot's criminal prosecution, they do allege Williams "received sworn complaints and exhibits identifying fabricated evidence and Brady violations, yet failed to investigate, correct, dismiss, halt, or prevent continued use of the false narrative[.]"[104] In other words, Plaintiffs allege that Williams continued to prosecute Lightfoot for theft of $50,000 despite having access to evidence showing Lightfoot never received this money. While Williams argues prosecutors had probable cause to continue Lightfoot's prosecution on the charges of perjury and racketeering, Plaintiffs specifically allege Williams lacked probable cause to continue his prosecution for theft over $50,000.[105] Accordingly, the Court must analyze whether Williams lacked probable cause to continue prosecuting Lightfoot for theft over $50,000, not on different charges.[106]

Taking Plaintiffs' allegations as true, Williams continued to prosecute Plaintiff for theft over $50,000 despite having strong reason to believe he was not guilty. If Williams possessed such exculpatory evidence, he would lack the honest and reasonable belief that Lightfoot committed the alleged theft and would have lacked probable cause to continue

[102] *Id.* at 559.
[103] *Id.* at 563.
[104] R. Doc. 60 at ¶¶ 77-78.
[105] *Id.* at ¶ 109.
[106] *Chiaverini*, 602 U.S. at 563.

prosecuting him for theft.[107] Accordingly, Plaintiffs have plausibly alleged element (4) of their § 1983 malicious prosecution claim—that Willaims lacked probable cause to continue prosecuting Lightfoot for theft over $50,000.

The Court will now address element (5), whether Plaintiffs plausibly alleged Williams prosecuted Lightfoot with malice. "[I]t is well established that malice can be inferred from the absence of probable cause."[108] In addition, allegations that an official deliberately concealed or failed to disclose exculpatory evidence can form the basis of an inference that a defendant acted with malice.[109]

As discussed above, Plaintiffs specifically allege Williams lacked probable cause to continue Lightfoot's criminal prosecution for theft over $50,000 as he disregarded exculpatory evidence.[110] Courts have found such allegations create an inference of malice.[111] Accordingly, Plaintiffs have plausibly alleged element (5) of their § 1983 malicious prosecution claim—that Williams prosecuted Lightfoot with malice.

Because Plaintiffs have plausibly alleged all elements of their § 1983 malicious prosecution claim against Williams in his official capacity, the Court will not dismiss this claim.

### B. Plaintiffs fail to plausibly allege a *Brady* claim against Williams in his Official Capacity because the charges against Mr. Lightfoot were dismissed before trial.

Plaintiffs fail to plausibly allege a *Brady* violation against Williams in his official capacity because the charges against Mr. Lightfoot ultimately were dismissed before trial. Importantly, "[t]he Constitution is not violated every time the government fails or chooses

---

[107] *See Reyes v. Greer*, 686 F. Supp. 3d 524, 536 (W.D. Tex. 2023).
[108] *Id.*
[109] *Id.* (citing *Sanders v. English*, 950 F.2d 1152, 1163 (5th Cir. 1992)).
[110] R. Doc. 60 at ¶¶ 77-78, 109.
[111] *Reyes*, 686 F. Supp. 3d at 536.

not to disclose evidence that might prove helpful to the defense."[112] Rather, to state a Brady claim for suppression of exculpatory evidence, a plaintiff must show that "(1) the prosecution suppressed evidence, (2) it was favorable to the defendants, and (3) it was material."[113] Regarding the third factor, evidence is "material" when there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[114] The Supreme Court has stated that "strictly speaking, there is never a real *Brady* violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."[115] Courts in this Circuit have interpreted this statement to mean that, if the prosecution drops the charges against a plaintiff before trial, the plaintiff cannot maintain a claim under *Brady*.[116]

In this matter, the Charges against Mr. Lightfoot were dismissed before he had a trial.[117] As a result, Plaintiffs cannot show the alleged withholding of evidence had a material impact on a verdict, because the criminal case did not yield any verdict.[118] Accordingly, Plaintiffs cannot maintain a Brady claim against Williams in his official capacity, and the Court will dismiss this claim.

### III. To the extent Plaintiffs bring other counts against Williams in his official capacity, these counts fail against Williams because the allegations are impermissible group pleading.

---

[112] *Miller v. Dretke*, 431 F. 3d 241, 245 (5th Cir. 2005) (citing *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995)).
[113] *Id.*
[114] *Id.*
[115] *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (internal quotation omitted).
[116] *James v. City of Plaquemine, Louisiana*, No. CV 18-858-JWD-EWD, 2019 WL 4452834, at *7 (M.D. La. Sept. 17, 2019)( "Because the charges were dismissed prior to trial, he cannot show that the withholding of evidence affected the outcome of his trial, and thus, Plaintiff's alleged *Brady* violation is not cognizable under § 1983"); *Melton v. Ellis County District Attorney's Office*, No. 21-2857, 2022 WL 3220065, at *2 n. 3 (N.D. Tex. July 18, 2022) ("Because the charges against Plaintiff were dropped, he cannot maintain a *Brady* claim.").
[117] R. Doc. 84-1 at p. 10.
[118] See *City of Plaquemine, Louisiana*, 2019 WL 4452834, at *7 (M.D. La. Sept. 17, 2019).

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Based on this Rule, courts have held that the Federal Rules entitle "each defendant . . . to know what he or she did that is asserted to be wrongful."[119] Mere "conclusory allegations against [d]efendants as a group" that "fail[ ] to allege the personal involvement of any defendant" are insufficient to put Defendants on notice of their alleged wrongdoing.[120] A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged."[121] When a number of defendants are named in a complaint, a plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct."[122] "While referring to a collective group of defendants is not a fatal pleading deficiency, "[e]ach defendant is [still] entitled to know what he or she did that is asserted to be wrongful."[123] The critical inquiry is whether the complaint, with its group allegations, provides each defendant with adequate notice of the plaintiff's claims and the grounds upon which the claim rests.[124] The Court must disregard "bare assertions of collective responsibility, unsupported by concrete factual allegations."[125]

---

[119] *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849478, at *5 (E.D. La. May 13, 2016) (citation omitted).

[120] *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (dismissing plaintiffs' claims without prejudice for failure to provide each defendant with notice of its alleged participation in the racketeering enterprise).

[121] *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution); *Aruanno v. Main*, 467 F. App'x 134, 137-38 (3d Cir. 2012) (dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants).

[122] *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (alteration in original).

[123] *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021) (citation omitted).

[124] *Valadez v. City of San Antonio*, No. SA21CV0002JKPRBF, 2022 WL 1608016, at *5 (W.D. Tex. May 20, 2022).

[125] *Iqbal*, 556 U.S. at 678.

A complaint that contains "impermissibly vague group pleading" will be dismissed.[126] For example, in *Cain v. City of New Orleans*, the plaintiffs brought 42 U.S.C. § 1983 claims against the City of New Orleans, the Sheriff, and various court officials for their involvement in the plaintiffs' allegedly unconstitutional criminal prosecution.[127] In their complaint, the plaintiffs directed their allegations towards "'defendants' as a group" and failed to identify specific acts of misconduct by specific defendants.[128] This district court found such allegations insufficient to state a plausible claim for relief because the allegations "largely prevent[ed] the Court from discerning which defendants [were] allegedly responsible for which allegedly unlawful actions."[129] Accordingly, the court dismissed the plaintiffs' claims that "lump[ed] all defendants together and assert[ed] identical allegations as to each, without distinction."[130]

The OPDA Defendants argue Plaintiffs assert the majority of their claims against groups of defendants without specifying which defendants committed what acts.[131] The OPDA Defendants argue Plaintiffs' vague allegations in these claims fail to show what wrongful conduct each defendant committed and, as a result, the Court should dismiss these claims.[132] Plaintiffs argue in opposition that their Second Amended Complaint identifies the OPDA Defendant's conduct they allege was wrongful and that they are not required to repeat every factual allegation in their complaint under each count.[133]

---

[126] *Hawkins v. Sanders*, No. CV 19-13323, 2023 WL 2565403 at *3 (E.D. La. Mar. 17, 2023).
[127] *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849478, at *3 (E.D. La. May 13, 2016).
[128] *Id.* at *5.
[129] *Id.*
[130] *Id.*
[131] R. Doc. 84-1 at p. 13.
[132] *Id.*
[133] R. Doc. 95 at p. 36.

The Court has dismissed all of Plaintiffs' claims against the OPDA Defendants, including Williams, in their individual capacities. The Court also has dismissed Count IV against Williams in his official capacity, but found that Plaintiffs stated a plausible claim against Williams in his official capacity under Count II. As a result, the Court need only analyze whether any of Plaintiffs' counts besides II and IV plausibly plead a claim against Williams in his official capacity.

None of the remaining counts plausibly alleges a claim against Williams in his official capacity. In fact, Plaintiffs do not name Williams in any of the counts, let alone in name him in his official capacity. Instead, Plaintiffs bring these claims against "any prosecutorial Defendant," "state actors and joint actors," "private Defendants and public Defendants," or simply "Defendants." For example, Plaintiffs bring Count III—fabrication of evidence and judicial deception—against

> Defendants Megan C. Kiefer, Glenn Pardiane, Frank Denton, Alan Arcana, Sgt. Patrick Bardley, and any prosecutorial Defendant whose non-immune investigative or evidence-management conduct involved fabrication or continued use of fabricated evidence.[134]

Similarly, Plaintiffs bring Count V—Equal Protection/Selective Prosecution—against

> [S]tate actors and joint actors whose conduct caused race-based disparate treatment in investigation, charging, prosecution, plea treatment, and continuation of proceedings.[135]

Plaintiffs also attempt to assert a *Monell* claim in Count X against the "City of New Orleans and municipal official-capacity Defendants where appropriate.[136]

It is not clear from Plaintiffs' allegations which claims Plaintiffs assert against Williams in his official capacity. Plaintiffs do not bring any of their remaining claims

[134] R. Doc. 60 at ¶ 227.
[135] *Id.* at ¶ 227.
[136] *Id.* at ¶ 276.

specifically against him and instead bring claims against "prosecutorial defendants" or official-capacity defendants. Plaintiffs named multiple prosecutors in their Second Amended Complaint. In addition, Plaintiff seeks to hold multiple individuals, who are not addressed in this order and reasons, in their official capacities, namely Frank Denton, Alan Arcana, Patrick Bardley, Anne Kirkpatrick, and Robert Hodges. As a result, neither the Court nor Williams can ascertain which claims Plaintiffs seek to bring against Williams and on what basis. Apparently, the Plaintiffs would put the burden on Williams to determine which counts are asserted against him in his official capacity rather than giving Williams notice of the claims against him and the grounds upon which each claim rests. The allegations in these counts constitute impermissible group pleading because they refer to defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct" and which counts they bring against them.[137] As a result, neither the Court, nor Williams, can ascertain the claims against him. Accordingly, Plaintiffs fail to state a claim against Williams in his official capacity outside of Count II.

Finally, in a return to the Rule 12(b)(6) standard, Plaintiffs have failed to allege facts that support the elements of their many causes of action against Williams in his official capacity other than Count II. The Fifth Circuit instructs us that a plaintiff "must allege facts that support the elements of the cause of action in order to make out a valid claim."[138] To plausibly state a claim against Williams in his official capacity, Plaintiffs' complaint would have to include factual allegations supporting the elements of each cause of action and show how they are entitled to relief.[139] Plaintiffs' barebones allegations fail

[137] *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).
[138] *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).
[139] *Id.*

to establish, or even mention, the elements of many of Plaintiffs' asserted causes of action. For this reason, as well, Plaintiffs' factual allegations against Williams fail to state a valid claim for relief other than Count II.

## IV. Plaintiffs' are not entitled to declaratory relief against the OPDA Defendants in their individual capacities.

While absolute prosecutorial immunity bars Plaintiffs' claims for damages against the OPDA Defendants in their individual capacities, such immunity does not extend to claims for injunctive or declaratory relief.[140] In the Second Amended Complaint, the Plaintiffs request injunctive and declaratory relief. With respect to declaratory relief, Plaintiffs state:

> An actual controversy exists concerning the continuing legal, reputational, property, and records-based consequences of the criminal prosecution and investigative records described herein.
>
> Plaintiffs seek a declaration that the criminal charges and prosecution were premised on a factual narrative unsupported by evidence, including the alleged nonexistent $50,000 Progressive payment.
>
> Plaintiffs seek a declaration that the continued maintenance, use, or failure to correct official records containing the false $50,000 payment narrative violates Plaintiffs' rights to the extent those records continue to impose collateral consequences.
>
> Plaintiffs seek only declaratory relief tied to ongoing legal consequences and do not seek an advisory opinion.[141]

Plaintiffs further request:

> Prospective corrective or injunctive relief where legally available, including correction, retraction, or non-use of false official records to the extent ongoing collateral consequences exist.[142]

---

[140] *Singleton v. Cannizzaro*, 956 F.3d 773, 778 (5th Cir. 2020).
[141] R. Doc. 60 at ¶¶ 329-332.
[142] *Id.* at p. 53.

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."[143] This injury may not be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."[144] "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'"[145] In *Clofer v. Connick*, Judge Ashe of this district court held that a plaintiff bringing a malicious prosecution claim did not have standing to request injunctive or declaratory relief after he had been released from custody and there was no indication he would be re-prosecuted for the charges.[146]

In this matter, Plaintiffs assert only speculative and conclusory allegations of future injury. As frequently noted throughout the second amended complaint, the criminal charges against Mr. Lightfoot were dismissed in 2024. While Plaintiffs allege Mr. Lightfoot's criminal prosecution resulted in "collateral consequences," the Second Amended Complaint fails to detail any of these consequences or how the OPDA Defendants have subjected them to continued harm. Moreover, there is no indication that the OPDA intends to re-prosecute Mr. Lightfoot for any of the charges they previously brought against him. Plaintiffs allege only past exposure to illegal conduct and do not detail any on-going controversy. Because Plaintiffs fail to allege facts from which it appears there is a substantial likelihood that they will suffer injury in the future, they fail

---

[143] *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).
[144] *Id.*
[145] *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).
[146] *Clofer v. Connick*, No. CV 23-6268, 2024 WL 4855475, at *4 (E.D. La. Nov. 21, 2024).

to state any claim for which they may obtain injunctive or declaratory relief.[147]

## V. Plaintiffs have had multiple chances to amend their complaint and will not be given another opportunity.

Plaintiffs ask the Court for leave to amend their complaint in the event the Court "finds any theory insufficiently particularized."[148] Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." A "court must have a 'substantial reason' to deny a request for leave to amend" and "may consider factors such as whether there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'"[149] "The district court is entrusted with the discretion to grant or deny a motion to amend."[150]

The Court will not grant Plaintiffs leave to amend. Plaintiffs have filed five complaints/petitions during this litigation; they have already amended their complaint four times—twice in state court and twice before this court.[151] The Court allowed Plaintiffs to file their latest complaint on June 8, 2026.[152] Despite these ample opportunities, as discussed *supra*, Plaintiffs have still failed to state plausible claims for relief against the OPDA Defendants. The Court will not provide Plaintiffs with unlimited opportunities to try to state a claim. Based on Plaintiffs' "repeated failure[s] to cure deficiencies by amendments previously allowed,"[153] the Court finds further amendment is not warranted.

---

[147] *Bauer*, 341 F.3d at 358.
[148] R. Doc. 95 at p. 46.
[149] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quoting *Jacobsen v. Osborne,* 133 F.3d 315, 318 (5th Cir. 1998)).
[150] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)).
[151] R. Docs. 1-3; 1-4; 52, 60. This includes the amended complaint Plaintiffs attempted to file on April 15, 2026.
[152] R. Docs. 59, 60.
[153] *Herrmann Holdings Ltd.*, 302 F.3d at 566.

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss filed by the OPDA Defendants is **GRANTED** in part.[154] All claims asserted against the OPDA Defendants in their individual capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to dismiss Count II § 1983 Fourth Amendment malicious prosecution claim against Jason Williams in his official capacity is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent there are counts against Jason Williams in his official capacity other than Count II, the motion is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana, this 9th day of October, 2026.**

Susie Morgan

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[154] R. Doc. 84.