**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHAD LIGHTFOOT, ET AL.,** **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-434** |
| **PROGRESSIVE DIRECT INSURANCE COMPANY, ET AL.,** **Defendants** | **SECTION: "E" (1)** |

**AMENDED ORDER AND REASONS**

Before the Court is a motion to dismiss for failure to state a claim filed by Liberty Mutual Insurance Company (Liberty Mutual)[1] and a motion to dismiss for failure to state a claim filed by Progressive Direct Insurance Company, Progressive Paloverde Insurance Company (sometimes collectively referred to as "Progressive"), and United Financial Casualty Company ("United")[2] (sometimes collectively referred to as "Insurance Defendants").

Also before the Court is a motion to dismiss for failure to state a claim filed by Henry Minor Pipes and Kristin Beckman,[3] as well as a motion to dismiss for failure to state a claim filed by Adam Massey and David Strauss (sometimes collectively referred to as "Insurance Attorneys").[4]

Plaintiffs Chad Lightfoot, Geralyn Hawkins, and their minor children filed oppositions to these motions.[5] The Insurance Defendants and Massey and Strauss filed replies.[6]

---

[1] R. Doc. 64.
[2] R. Doc. 79.
[3] R. Doc. 65.
[4] R. Doc. 80.
[5] R. Docs. 75; 93; 94.
[6] R. Docs. 76; 97; 98.

## BACKGROUND[7]

This case arises out of a vehicle accident in Orleans Parish and the subsequent criminal prosecution of Plaintiff Chad Lightfoot for insurance fraud.[8] Plaintiffs allege that, on August 29, 2011, Mr. Lightfoot was involved in a vehicle accident in Orleans Parish.[9] Mr. Lightfoot filed insurance claims with multiple insurance carriers, including Liberty, Progressive Insurance Company,[10] and others.[11] Plaintiffs allege the insurance claim was not "resolve[d]. . . to Mr. Lightfoot's satisfaction" and, as a result, in 2012, he brought a personal-injury lawsuit in Orleans Parish Civil District Court against Progressive Insurance Company and other related defendants ("the underlying civil action").[12]

Plaintiffs allege that, on or about September 19, 2014, Megan Kiefer and Ignatz Kiefer assaulted Mr. Lightfoot inside the Orleans Parish Courthouse in retaliation for his bringing the underlying civil action.[13] Plaintiffs further allege that, in December 2014, Megan Kiefer prepared and swore to a false affidavit she submitted to the New Orleans Police Department stating that Mr. Lightfoot fraudulently obtained a $50,000 payment from Progressive Insurance Company in connection with the August 29, 2011 accident.[14] Plaintiffs allege the affidavit included Megan Kiefer's statement that, in obtaining the $50,000 payment from Progressive Insurance Company, Mr. Lightfoot committed perjury, insurance fraud, and filed false public records.[15] Plaintiffs allege these statements

---

[7] These factual allegations are based on the Plaintiffs' Second Amended Complaint. R. Doc. 60.
[8] *Id.*
[9] *Id.* at ¶ 85.
[10] Progressive Insurance Company is the parent company for Progressive Direct Insurance Company and Progressive Paloverde Insurance Company.
[11] R. Doc. 60 at¶ 87. Apparently, these are Chad Lightfoot's underinsured motorist insurance carriers.
[12] *Id.* at ¶¶ 87-88.
[13] *Id.* at ¶ 90. Plaintiffs do not bring a cause of action for damages resulting from this physical altercation.
[14] *Id.* at ¶¶ 95-96.
[15] *Id.* at ¶ 96.

were false and the "Progressive" records confirmed that Mr. Lightfoot never received a $50,000 payment.[16] Plaintiffs allege the Insurance Attorneys obtained a judgment for attorneys' fees in the underlying civil action against Mr. Lightfoot.[17] Plaintiffs further allege that, on August 22, 2016, this judgment was recorded as a judicial mortgage against Mr. Lightfoot's homestead, which "clouded Mr. Lightfoot's title and exerted improper financial pressure. . . ."[18] Plaintiffs allege that Kristin L. Beckman and Adam Massey "participated in preparing, filing, recording, or enforcing civil judgment and judicial-mortgage materials. . . ."[19]

Plaintiffs allege New Orleans Police Department Detective Frank Denton, without conducting further investigation into the affidavit's validity, relied on Megan Kiefer's false affidavit and Denton's report to obtain an arrest warrant for Mr. Lightfoot charging him with theft of over $50,000, automobile insurance fraud, perjury, filing false public records, or related charges.[20] Plaintiffs allege that, on January 6, 2015, Mr. Lightfoot was arrested pursuant to this warrant.[21] Plaintiffs further allege that the Louisiana State Police Insurance Fraud Division began an investigation into Lightfoot's alleged insurance fraud scheme.[22] Plaintiffs allege that Defendant State Police Lieutenant Alan Arcana stated in a police report that Mr. Lightfoot received $50,000 in payments from "Progressive."[23] Plaintiffs allege Lieutenant Arcana testified that "Progressive" insurance investigator Glenn Pardiane represented to him that Mr. Lightfoot received a $50,000 payment.[24]

---

[16] *Id.* at ¶ 98.
[17] *Id.* at ¶ 124.
[18] *Id.* at ¶¶ 125-27.
[19] *Id.* at ¶¶ 43, 45.
[20] *Id.* at ¶ 107.
[21] *Id.* at ¶ 110.
[22] *Id.* at ¶ 115.
[23] *Id.* at ¶¶ 117-18.
[24] *Id.* at ¶ 121.

Plaintiffs allege that, during the criminal proceedings, it was discovered there was no record of a $50,000 insurance payout to Mr. Lightfoot but that, despite this lack of evidence, Mr. Lightfoot was criminally prosecuted for insurance fraud.[25] Plaintiffs allege the criminal charges against Mr. Lightfoot were dismissed on or about October 15, 2024.[26]

Mr. Lightfoot and his spouse, Geralyn Hawkins, filed this suit *pro se* on October 20, 2025 in Orleans Parish Civil District Court.[27] In their original petition, Mr. Lightfoot and Ms. Hawkins brought a single claim against "unknown named Defendants" under La. R.S. 15:572.8, which provides compensation to persons wrongfully convicted and imprisoned.[28]

On November 10, 2025, Mr. Lightfoot and Ms. Hawkins filed a First Amended Petition, adding their minor children as named Plaintiffs and bringing 8 counts against various defendants for actions related to Mr. Lightfoot's criminal prosecution and the civil judgment entered against him and recorded as a judicial mortgage.[29] These defendants include the Insurance Defendants and the Insurance Attorneys in the underlying civil action—Kristin Beckman and Henry Minor Pipes (attorneys for Liberty Mutual), and Adam Massey and David Strauss (attorneys for Progressive).[30]

On January 20, 2026, Plaintiffs filed a Second Amended Petition in state court.[31] While this petition did not alter or amend any of the causes of action Plaintiffs attempted to plead in their First Amended petition, it removed Plaintiffs' minor children as parties.[32]

---

[25] *Id.* at ¶ 136.
[26] *Id.* at ¶ 142.
[27] R. Doc. 1-2.
[28] *Id.* at pp. 1-2.
[29] R. Doc. 1-3.
[30] *Id.* at pp. 3-5.
[31] R. Doc. 1-4.
[32] *See id.* at p. 1.

Robert Hodges and Alan Arcana removed the matter to this Court on February 27, 2026.[33] Following removal, multiple defendants filed motions to dismiss, including Liberty Mutual;[34] Kristin Beckman and Henry Pipes;[35] Progressive and United;[36] and Adam Massey and David Strauss.[37] In their motions to dismiss, the Insurance Defendants argue that each of Plaintiffs' 8 counts were time barred, Plaintiffs' petition was devoid of any factual allegations that could plausibly state a claim for relief against them, and Plaintiffs impermissibly lumped all the defendants together and collectively asserted claims against them.[38]

On April 15, 2026, in response to the motions to dismiss, Plaintiffs moved, *pro se*, to file a First Amended Complaint in federal court in order to provide additional factual details, clarify their claims for relief, and "narrow[] certain theories to address issues raised or anticipated in Defendants' Rule 12(b)(6) motions."[39] The Plaintiffs attached their proposed amended complaint to their motion.[40] On April 22, 2026, the Court granted Plaintiffs' leave to file an amended complaint, but advised Plaintiffs to revise their proposed restated and amended complaint, as the proposed version failed to address the arguments Defendants made in their motions to dismiss.[41] The Court ordered Plaintiffs to file a revised and restated amended complaint, addressing "fully and completely, all arguments raised in the Defendants' motions to dismiss," on or before on May 6, 2026.[42]

---

[33] R. Doc. 1.
[34] R. Doc. 17.
[35] R. Doc. 18.
[36] R. Doc. 33.
[37] R. Doc. 40.
[38] R. Doc. 17 at p. 1; R. Doc. 33 at p. 2.
[39] R. Doc. 52 at p. 1.
[40] R. Doc. 52-1.
[41] R. Doc. 53 at p. 3.
[42] *Id.*

On May 6, 2026, rather than file their amended and restated complaint, Plaintiffs simultaneously moved to enroll counsel of record and for an extension of time to file their restated and amended complaint.[43] The Court granted Plaintiffs' motion and ordered Plaintiffs to file their restated and amended complaint on or before June 8, 2026.[44]

On June 8, 2026, Plaintiffs filed their Second Amended Complaint[45]—their fourth petition/complaint filed in the course of this litigation—in response to the Court's order that the amended complaint address fully and completely all arguments raised in the defendants' motions to dismiss. In Plaintiffs' Second Amended Complaint, Plaintiffs bring claims against various defendants they allege were associated with Mr. Lightfoot's criminal prosecution, including the Insurance Defendants and Insurance Attorneys. While Plaintiffs' previous complaints brought only 8 counts against the defendants for violating La. C.C.P. art. 2315 and various constitutional violations, their Second Amended Complaint asserts 20 counts against various defendants for multiple state law tort claims and constitutional violations.[46]

On June 15, 2026, Liberty Mutual filed its motion to dismiss for failure to state a claim;[47] Beckman and Pipes filed their own motion to dismiss on June 16, 2026.[48] On July 8, 2026, Progressive and United, as well as Massey and Strauss, filed their motions to dismiss.[49] In their motions, the Insurance Defendants and Insurance Attorneys argue Plaintiffs' allegations are too vague to state a plausible claim against them.[50] The

43 R. Doc. 56.
44 R. Doc. 59.
45 R. Doc. 60.
46 In Plaintiffs' Second Amended Complaint, they added Eric Cusimano, Jason Williams, and Sgt. Patrick Bardley as Defendants.
47 R. Doc. 64.
48 R. Doc. 65.
49 R. Docs. 79; 80.
50 R. Doc. 64-1 at p. 7; R. Doc. 79-1 at pp. 6-7.

Insurance Defendants and Insurance Attorneys also argue Plaintiffs do not specifically name any of them in the 20 counts of their Second Amended Complaint.[51] The Insurance Defendants and Insurance Attorneys argue Plaintiffs' abuse of process claim is prescribed as to all of them, as the last of any alleged acts that could constitute abuse of process occurred in 2016, when the judgment in the underlying civil action was recorded, thereby creating a judicial mortgage on Plaintiffs' property.[52]

Plaintiffs argue they have made sufficient allegations against the Insurance Defendants and Insurance Attorneys regarding their conduct that harmed Plaintiffs.[53] Plaintiffs further argue their abuse of process claim has not prescribed because the Insurance Defendants' and Insurance Attorneys' abuse of process resulted in Mr. Lightfoot's criminal prosecution, which was not dismissed until October 15, 2024.[54] As a result, Plaintiffs argue the prescriptive period for their abuse of process claim began running on October 15, 2024, not on August 22, 2016, or before.[55]

## LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[56] A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted.[57] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

[51] R. Doc. 64-1 at p. 7; R. Doc. 79-1 at p. 6.
[52] R. Doc. 64-1 at pp. 7-9; R. Doc. 79-1 at pp. 7-8.
[53] R. Doc. 75 at p. 3; R. Doc. 89-1 at p. 12.
[54] R. Doc. 75 at p. 6; R. Doc. 89-1 at p. 20.
[55] *Id.*
[56] Fed. R. Civ. P. 8(a)(2).
[57] *See* Fed. R. Civ. P. 12(b)(6).

me accusation."[58] "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'"[59] "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[60]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[61] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[62] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[63] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'"[64] Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"[65] or "naked assertion[s]"[66] devoid of "further factual enhancement"[67] are not sufficient.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[68] However, "legal conclusions can provide the framework

[58] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[59] *Id.* (quoting *Twombly*, 550 U.S. at 555).
[60] *Id.* (quoting *Twombly*, 550 U.S. at 557).
[61] *Twombly*, 550 U.S. at 555; *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[62] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[63] *Id.* (citing *Twombly*, 550 U.S. at 556).
[64] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[65] *Iqbal*, 556 U.S. at 678 (citations omitted).
[66] *Twombly*, 550 U.S. at 557.
[67] *Id.*
[68] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

of a complaint, [if] they [are] supported by factual allegations."[69] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[70] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[71] Whether a plaintiff "will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to dismiss.[72] "'[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment . . . .'"[73]

## LAW AND ANALYSIS

### I. Plaintiffs' group pleadings fail to state a cause of action against the Insurance Defendants.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Based on this Rule, courts have held that the Federal Rules entitle "each defendant . . . to know what he or she did that is asserted to be wrongful."[74] Mere "conclusory allegations against [d]efendants as a group" that "fail[ ] to allege the personal involvement of any defendant" are insufficient to put Defendants on notice of their alleged wrongdoing.[75] A plaintiff must allege facts that

---

[69] *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 545.
[70] *Iqbal*, 556 U.S. at 679.
[71] *Cutrer v. McMillan*, 308 F.App'x. 819, 820 (5th Cir. 2009) (per curiam) (unpublished opinion) (citations omitted).
[72] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).
[73] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022) (quoting *Bilyeu v. Johanson Berenson LLP*, 2010 WL 3896415, at *9 (W.D. La. Sep. 30, 2010)).
[74] *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849478, at *5 (E.D. La. May 13, 2016).
[75] *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (dismissing plaintiffs' claims without prejudice for failure to provide each defendant with notice of its alleged participation in the racketeering enterprise).

"establish each individual [d]efendant's liability for the misconduct alleged."[76] When a number of defendants are named in a complaint, a plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct."[77] "While referring to a collective group of defendants is not a fatal pleading deficiency, "[e]ach defendant is [still] entitled to know what he or she did that is asserted to be wrongful."[78] The critical inquiry is whether the complaint, with its group allegations, provides each defendant with adequate notice of the plaintiff's claims and the grounds upon which the claim rests.[79] The Court must disregard "bare assertions of collective responsibility, unsupported by concrete factual allegations."[80]

A complaint that contains an "impermissibly vague group pleading" will be dismissed.[81] For example, in *Cain v. City of New Orleans*, the plaintiffs brought 42 U.S.C. § 1983 claims against the City of New Orleans, the Sheriff, and various court officials for their involvement in the plaintiffs' allegedly unconstitutional criminal prosecution.[82] In their complaint, the plaintiffs directed their allegations towards "'defendants' as a group" and failed to identify specific acts of misconduct by specific defendants.[83] The district court judge found such allegations insufficient to state a plausible claim for relief because the allegations "largely prevent[ed] the Court from discerning which defendants [were]

---

[76] *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution); *Aruanno v. Main*, 467 F. App'x 134, 137-38 (3d Cir. 2012) (dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants).
[77] *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).
[78] *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021).
[79] *Valadez v. City of San Antonio*, No. SA21CV0002JKPRBF, 2022 WL 1608016, at *5 (W.D. Tex. May 20, 2022).
[80] *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849478, at *5 (E.D. La. May 13, 2016).
[81] *Falat*, 2013 WL 1163751, at *3.
[82] 2016 WL 2849478, at *3.
[83] *Id.* at *5.

allegedly responsible for which allegedly unlawful actions."[84] Accordingly, the court dismissed the plaintiffs' claims that "lump[ed] all defendants together and assert[ed] identical allegations as to each, without distinction."[85]

The Insurance Defendants argue the Court should dismiss Plaintiffs' claims against them because Plaintiffs lumped "all defendants together and collectively assert claims against them" and Plaintiffs do not bring any of their 20 counts against any of them by name.[86] The Insurance Defendants argue that Plaintiffs cannot state a plausible claim against any of them by alleging that "defendants" collectively have committed various acts of wrongdoing without specifying which defendant did which acts.[87] Plaintiffs respond that, based on the allegations in their complaint, the Insurance Defendants are aware of the conduct for which Plaintiffs seek redress.[88]

Although some of the counts asserted in the Second Amended Complaint are brought against various named defendants, not one of them is asserted against any of the Insurance Defendants by name. Furthermore, all of the counts are brought against *unidentified* defendants.[89] For example, Count I is brought against Megan C. Kiefer, Glenn Pardiane, Frank Denton, Alan Arcana, Sgt. Patrick Bardley, the City of New Orleans under *Monell* and also against "other Defendants whose direct conduct or joint action caused Mr. Lightfoot's arrest without probable cause."[90] Count VIII for civil rights conspiracy is brought only against unidentified "Defendants who reached an agreement, explicit or implicit, to deprive Mr. Lightfoot of equal protection or equal privileges and

[84] *Id.*
[85] *Id.*
[86] R. Doc. 64-1 at p. 7-9; R. Doc. 79-1 at p. 6.
[87] *Id.*
[88] R. Doc. 75 at p. 3; R. Doc. 89-1 at p. 12.
[89] Count XVIII is a demand for declaratory judgment. Counts XIX and XX are descriptions of Plaintiffs' request for punitive damages and penalties.
[90] R. Doc. 60 at ¶ 206.

immunities."[91] Count XIV for intentional infliction of emotional distress is brought only against unidentified "Defendants whose conduct was extreme and outrageous."[92]

Plaintiffs allege the "attorney and insurance Defendants" as a group committed wrongful acts:

> Through that civil litigation, the private attorney and insurance Defendants gained access to claim information, payment histories, medical information, financial information, litigation materials, and claim databases.[93]
>
> On or about August 22, 2016, attorney and insurance Defendants recorded or caused to be recorded the January 23, 2015 judgment as a judicial mortgage against Mr. Lightfoot's homestead or immovable property.[94]
>
> Supervisory, policymaking, prosecutorial, Internal Affairs, and insurance Defendants were placed on notice [of a conspiracy] through complaints, letters, subpoena proceedings, internal-affairs materials, and court proceedings.[95]

Bringing a cause of action against groups of defendants based on the conduct of all of them is not sufficient to allege the personal involvement of any defendant and does not put any defendant on notice of alleged wrongdoing. No defendant could receive adequate notice of a claim and the grounds upon which the claim rests based on this type of pleading. Apparently, the Plaintiffs would put the burden on the defendants to determine which counts are asserted against each of them rather than giving each defendant notice of the claims against them and the grounds upon which each claim rests. This unprecedented manner of pleading, never before seen by this Court, is vague and impermissible group pleading on steroids.

---

[91] *Id.* at ¶ 263.
[92] *Id.* at ¶ 304.
[93] *Id.* at ¶ 89.
[94] *Id.* at ¶ 126.
[95] *Id.* at ¶ 270.

Based on these allegations, neither the Court nor the Insurance Defendants can discern which causes of action are brought against which defendants and what unlawful actions were committed by each defendant. Such vague, collective allegations do not state plausible claims for relief.[96] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[97] Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"[98] or "naked assertion[s]"[99] devoid of "further factual enhancement"[100] are not sufficient. The complaint must provide the defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."[101] Plaintiffs allegations do not allow the Insurance Defendants or the Court to discern what wrongful conduct Plaintiffs allege the Insurance Defendants committed.

The Plaintiffs place particular emphasis on Count XII—Abuse of Process—and Count XVII—Property Harm/Judicial Mortgage Damages/Abuse of Civil Judgment Remedies. As discussed in Section III *infra*, these claims are prescribed. For the sake of completeness, the Court notes that, even for these claims, Plaintiffs' allegations fall short because they constitute group pleading. In Count XII—Abuse of Process—Plaintiffs allege that:

> This Count is brought against private attorney, insurance, and other Defendants who misused civil or criminal process for ulterior purposes.
>
> Defendants used civil judgments, judicial mortgages, criminal affidavits, police reports, warrants, and prosecution not merely for their regular legal purposes, but

---

[96] *See Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849478, at *5 (E.D. La. May 13, 2016).
[97] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).
[98] *Id.* at 678 (citations omitted).
[99] *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).
[100] *Id.*
[101] *Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014).

> to pressure Mr. Lightfoot, retaliate against him for pursuing civil claims, cloud his property, and force abandonment or disadvantage in civil litigation.
>
> Defendants committed willful acts in the use of process not proper in the regular prosecution of proceedings.[102]

Count XVII is captioned Property Harm/Judicial Mortgage Damages/Abuse of Civil Judgment Remedies. Plaintiffs allege this claim is for Louisiana law abuse of process and tortious use of civil process. Because Count XVII sounds in abuse of process, the Court will treat Count XVII as an abuse of process claim. Plaintiffs again engage in group pleading alleging that:

> This Count is brought against private attorney and insurance Defendants whose conduct caused or contributed to improper property harm through civil judgment and judicial mortgage mechanisms.
>
> Plaintiffs allege that the judgment and judicial mortgages were used to cloud Mr. Lightfoot's title, exert financial pressure, and support the false criminal narrative.
>
> Plaintiffs plead this claim as damages, abuse of process, and tortious use of civil process. Plaintiffs do not seek improper appellate review of a state-court judgment in this Court.
>
> Plaintiffs seek damages for property-related harm, clouded title, economic losses, credit impairment, emotional distress, and related injury caused by Defendants' tortious conduct.[103]

Plaintiffs bring Counts XII and XVII against "attorney and insurance Defendants," but Plaintiffs have named eight attorneys and four separate insurance companies as defendants. It is not clear from these allegations which attorney or which insurance company is accused of abusing which process and by what means. Plaintiffs have failed to state a claim for abuse of process against the Insurance Defendants because they do not allege facts that would provide those defendants with notice of the claims against each of them and the grounds upon which the claims rest. Plaintiffs do not name any of the

---

[102] R. Doc. 60 at ¶¶ 290-295.
[103] *Id.* at ¶¶ 323-327.

Insurance Defendants in any of the counts. Plaintiffs do not specify which Insurance Defendants attempted to "retaliate" against Mr. Lightfoot for pursuing his civil claims or "disadvantage" him in the underlying civil litigation, or what conduct of any unnamed Insurance Defendant caused Plaintiffs' harm. In Counts XII and XVII, they refer collectively to a group of defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct."[104] As a result, neither the Court, nor the Insurance Defendants, can ascertain the claims against each of the Insurance Defendants or the grounds upon which any claim rests. Accordingly, Plaintiffs have failed to state any plausible claim for relief against the Insurance Defendants under Counts XII and XVII.

Finally, in a return to the Rule 12(b)(6) standard, Plaintiffs have failed to allege facts that support the elements of any cause of action against the Insurance Defendants. The Fifth Circuit instructs us that a plaintiff "must allege facts that support the elements of the cause of action in order to make out a valid claim."[105] Plaintiffs' barebones allegations fail to establish or even plead facts to support, the elements of any of Plaintiffs' asserted causes of action. For this reason, as well, Plaintiffs' factual allegations against the Insurance Defendants fail to state a valid claim for relief.

Accordingly, the Court will dismiss Plaintiffs' claims against the Insurance Defendants.

## II. Plaintiffs' group pleadings fail to state a cause of action against the Insurance Attorneys.

The Court's analysis of the sufficiency of the allegations against the Insurance Defendants applies equally to the Insurance Attorneys. The Plaintiffs also have engaged

---

[104] *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).
[105] *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).

in group pleading with respect to the Insurance Attorneys and have otherwise failed to state claims against them.

The Plaintiffs mention Pipes by name twice in the Second Amended Complaint, both times in Plaintiff's listing of defendants, wherein Plaintiffs name Pipes as a defendant and allege his involvement as follows:

> Defendant Henry Pipes, Esq. is a Louisiana-licensed attorney. He is sued in his individual capacity.
>
> On information and belief, Pipes is alleged to have participated, as insurance-defense counsel, in advocating, supporting, or coordinating civil litigation steps and criminal-referral efforts that relied upon disputed or false financial information.[106]

The Plaintiffs mention Beckman by name twice in the Second Amended Complaint, both times in Plaintiffs' listing of defendants, wherein Plaintiffs name Beckman as a defendant and allege her involvement as follows:

> Defendant Kristin L. Beckman, Esq. is a Louisiana-licensed attorney. She is sued in her individual capacity.
>
> On information and belief, Beckman is alleged to have participated in preparing, filing, recording, or enforcing civil judgment and judicial-mortgage materials that were later used to support criminal allegations and to cloud Mr. Lightfoot's property.[107]

In their opposition to the motion to dismiss filed by Pipes and Beckman, Plaintiffs argue their second amended complaint provides Pipes and Beckman with sufficient notice of their alleged wrongdoing. Plaintiffs argue the second amended complaint alleges that Pipes participated "as insurance-defense counsel, in advocating, supporting, or coordinating civil litigation steps and criminal-referral efforts that relied upon disputed

[106] R. Doc. 60 at ¶¶ 48-49.
[107] *Id.* at ¶¶ 44-45.

or false financial information," and that Beckman participated in "preparing, filing, recording, or enforcing civil judgment and judicial-mortgage materials."[108]

The Plaintiffs mention Massey by name twice in the Second Amended Complaint, both times in Plaintiffs' listing of defendants, wherein Plaintiffs name Massey as a defendant and allege his involvement as follows:

> Defendant Adam Massey, Esq. is a Louisiana-licensed attorney. He is sued in his individual capacity.
>
> On information and belief, Massey is alleged to have participated in preparing, submitting, obtaining, recording, or enforcing civil judgment and judicial-mortgage materials that formed part of the pressure campaign against Mr. Lightfoot and were allegedly used as part of the factual framing for criminal referral.[109]

The Plaintiffs mention Strauss by name three times in the Second Amended Complaint, all in Plaintiffs' listing of defendants, wherein Plaintiffs name Strauss as a defendant and allege his involvement as follows:

> Defendant David Strauss, Esq. is a Louisiana-licensed attorney. He is sued in his individual capacity.
>
> On information and belief, Strauss is alleged to have participated in the underlying civil litigation, including civil filings and judgment-related conduct later used to support the criminal narrative. Plaintiffs further allege that Strauss personally threatened Mr. Lightfoot in the hallway of Orleans Parish Civil District Court by stating or communicating in substance that if Mr. Lightfoot did not dismiss or abandon his civil claims, Strauss would see that Mr. Lightfoot returned to prison.
>
> Plaintiffs plead the alleged Strauss threat as extra-judicial conduct, evidence of retaliatory motive, evidence of civil-to-criminal pressure, and evidence of an improper use of civil and criminal process beyond ordinary advocacy.[110]

The Insurance Attorneys argue that Plaintiffs lump the defendants together and collectively assert claims against all of them, which is insufficient to state a claim for

---

[108] R. Doc. 75 at p. 3.
[109] R. Doc. 60 at ¶¶ 42-43.
[110] *Id.* at ¶¶ 39-41.

relief.[111] Plaintiffs respond that the allegations of their Second Amended Complaint alert the Insurance Attorneys to their alleged wrongdoing.[112] Plaintiffs argue their complaint alleges specific conduct by the Insurance Attorneys and specifies how this conduct harmed Plaintiffs.[113]

The Insurance Attorneys are not mentioned by name in any of the Plaintiffs' 20 counts.[114] The allegations against those individuals Plaintiffs refer to as "attorney Defendants" include four attorneys other than Pipes, Beckman, Massey, and Strauss, namely Megan C. Kiefer, Ignatz J. Kiefer, William Kelly, and Leah Penny. Specifically, Paragraph 52 of the Second Amended Complaint alleges the attorney Defendants committed "extra-judicial conduct, false factual submissions to law enforcement, joint action with state actors, abuse of civil and criminal process, and tortious conduct outside protected advocacy."[115] In paragraph 89, the Plaintiffs allege the private attorney Defendants gained access to claim information, payment histories, medical information, financial information, litigation materials, and claim databases."[116] In paragraph 124, Plaintiffs allege that "private attorney Defendants obtained or participated in obtaining a civil judgment against Mr. Lightfoot in the underlying civil litigation."[117] In paragraph 126, Plaintiffs allege that attorney Defendants recorded or caused to be recorded the January 23, 2015 judgment as a judicial mortgage against Mr. Lightfoot's homestead or immovable property."[118] In paragraph 157, Plaintiffs allege "private insurance and attorney Defendants supplied or framed claim data in a manner that portrayed Mr.

[111] R. Docs. 65 at p. 2; 80-1 at p. 5.
[112] R. Doc. 75 at p. 5.
[113] *Id.*
[114] R. Doc. 60 at ¶¶ 205-338.
[115] *Id.* at ¶ 52.
[116] *Id.* at ¶ 89.
[117] *Id.* at ¶ 124.
[118] *Id.* at ¶ 126.

Lightfoot as a ringleader while minimizing or favorably treating similarly situated white or non-Black participants."[119] In paragraph 179, Plaintiffs allege that "the private attorney, insurance, and SIU Defendants acted under color of law for purposes of § 1983 because they were willful participants in joint action with state actors."[120] In paragraph 291, Plaintiffs allege that Count XII "is brought against private attorney, insurance, and other Defendants who misused civil or criminal process for ulterior purposes."[121] In paragraph 324, the Plaintiffs allege that Count XVII "is brought against private attorney and Insurance Defendants whose conduct caused or contributed to the improper property harm through civil judgment and judicial-mortgage mechanisms."[122]

These factual allegations in Plaintiffs' Second Amended Complaint are made against the "attorney Defendants" as a group and, as a result, fail to notify the Insurance Attorneys of the claims against each of them or the grounds on which each claim rests. Plaintiffs' allegations do not allow the Court or the Insurance Attorneys to discern what wrongful conduct Plaintiffs allege each Insurance Attorney committed. Furthermore, Plaintiffs do not include any allegations showing how the Insurance Attorneys acted improperly other than general allegations that they participated in the underlying civil action. Plaintiffs' allegations relate generally to filing materials in the underlying civil litigation and obtaining and recording a judgment against Mr. Lightfoot; Plaintiffs fail to detail any specific action each of the attorneys took in the underlying civil action, let alone any wrongful action.

[119] *Id.* at ¶ 157.
[120] *Id.* at ¶ 179.
[121] *Id.* at ¶ 291.
[122] *Id.* at ¶ 324. As discussed in Section III *infra*, the claims in Counts XII and XVII are prescribed.

In addition, as with the Insurance Defendants, Plaintiffs do not allege facts supporting the elements of any cause of action against the Insurance Attorneys. A plaintiff "must allege facts that support the elements of the cause of action in order to make out a valid claim."[123] To plausibly state a claim against the Insurance Attorneys, Plaintiffs' complaint would have to include factual allegations supporting the elements of each cause of action and show how they are entitled to relief.[124]

The Insurance Attorneys were counsel for the various Insurance Defendants, not for Plaintiffs. Plaintiffs argue they at least have made a claim against Strauss based on his intentional conduct.[125] "Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. A non-client, therefore, cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client."[126] "[E]ven though an attorney does not generally owe a legal duty to his client's adversary, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct."[127] Intentionally tortious action, even if ostensibly performed for a client's benefit, will not shroud an attorney with immunity.[128]

---

[123] *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).
[124] *Id.* at 152.
[125] R. Doc. 94 at P. 7.
[126] *Montalvo v. Sondes*, 637 So.2d 127, 130 (La. 1994).
[127] *Penalber v. Blount*, 550 So.2d 577, 582 (La. 1989).
[128] *Id.*

Under Louisiana law, a petition alleging an intentional tort in this context "must allege facts showing specific malice or an intent to cause direct harm on the part of the attorney in order to state a cause of action against an adversary's attorney.[129] Furthermore, Louisiana courts have held that the plaintiff must prevail in the underlying case before being permitted to sue the adversary's attorney, even for intentional acts.[130] Plaintiffs allege that Strauss engaged in "extra-judicial conduct, evidence of retaliatory motive, evidence of civil-to-criminal pressure, and evidence of an improper use of civil and criminal process beyond ordinary advocacy.[131] Plaintiffs did not allege facts that if undisputed would show that Strauss had specific malice towards the Plaintiffs or an intent to cause them direct harm. Finally, Plaintiffs do not allege that they prevailed in the underlying civil action.

Plaintiffs' barebones allegations fail to plead facts to support the elements of any of Plaintiffs' asserted causes of action against the Attorney Defendants. For this reason, as well, Plaintiffs have failed to state a valid claim for relief against them.

## III. Even if Plaintiffs stated Louisiana tort claims against the Insurance Defendants and Insurance Attorneys, the claims in Counts XII, XIII, XV, XVI, and XVII are prescribed.

As discussed more fully in Sections I and II *supra*, Plaintiffs have engaged in impermissible group pleading against the Insurance Defendants and Insurance Attorneys. As a result, the Plaintiffs' allegations fail to provide those defendants with notice of the claims against them or the grounds upon which Plaintiffs' claims rest. In fact, Plaintiffs do not reference the Insurance Defendants or Insurance Attorneys by name in

---

[129] *Landry v. Base Camp Management, LLC*, 206 So.3d 921, 925 (La. App. 1st Cir. 2016).
[130] *Montalvo*, 637 So.2d at 131-132.
[131] R. Doc. 60 at ¶¶ 40-41.

any of their 20 causes of action. Instead, the Plaintiffs allege that "defendants" collectively have committed various acts of wrongdoing without specifying which defendant did which acts.[132] As discussed above, this alone is grounds to dismiss the claims against the Insurance Defendants and Insurance Attorneys. Even if Plaintiffs had stated Louisiana tort causes of action against the Insurance Defendants and Insurance Attorneys in Counts XII, XIII, XV, XVI, and XVII, those claims are prescribed.

Counts XII and XVII, both of which are based on the Louisiana tort of abuse of process, are brought against "private attorney" and "insurance" defendants.[133] Louisiana recognizes abuse of process claims under La. Civ. Code art. 2315.[134] To state an abuse of process claim, a plaintiff must allege "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding."[135] Abuse of process is a tort claim that, at the time the incidents alleged herein occurred, was governed by La. C.C. art. 3492, which provided a prescriptive period of one year from the date of injury or damage.[136] The Court must determine whether the prescriptive period for this claim begins to run from the date the defendant allegedly used the improper legal process or from the date the resulting criminal proceeding was dismissed.

---

[132] *Id.*
[133] *Id.* at ¶¶ 291 and 324.
[134] *Waguespack, Seago & Carmichael (A PLC) v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00), 768 So. 2d 287, 290.
[135] *Id.* (citing *Succession of Cutrer v. Curtis,* 341 So.2d 1209, 1213-14 (La.App. 1 Cir.1976)).
[136] *Morice v. Yorkshire Ct. Condo. Ass'n, Inc.*, 23-118, p. 6 (La. App. 5 Cir. 11/29/23), 377 So.3d 848, 853 (stating that "claims for abuse of process raise delictual claims that are subject to a prescriptive period of one year."); Louisiana law regarding prescription was amended effective July 1, 2024 to extend the one-year prescriptive period to a two-year prescriptive period for delictual actions. *See* La. C.C. art. 3493.1. However, these changes apply prospectively only to delictual action arising after July 1, 2024. *See* 2024 La. Acts, No. 423, §§ 1 and 2 (providing that the extended period "shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act" and that "[t]his Act shall become effective on July 1, 2024").

In *Rieth v. Munguia*, the Louisiana Court of Appeal for the Fourth Circuit analyzed whether an abuse of process claim had prescribed.[137] In that case, the defendant filed a reconventional demand alleging the plaintiff committed abuse of process by filing the state court petition relating to a property dispute between the parties.[138] The court found the abuse of process claim was prescribed because the defendant filed the reconventional demand making the abuse of process claim more than a year after the plaintiff filed the state court petition that allegedly constituted abuse of process.[139] Importantly, the Louisiana appellate court held "the continuing tort doctrine does not apply to extend the prescriptive date . . ." and that "[t]he act of filing the petition by [plaintiff] was a singular act; any damages that occurred may have been continuing, but the allegedly tortious act occurred when the petition was filed."[140] Similarly, in *No Drama, LLC v. Caluda*, the Louisiana Court of Appeal for the Fifth Circuit found the prescriptive period for an abuse of process claim began to run on the date the defendant filed the petition the plaintiff alleged constituted abuse of process.[141] The court held that "[a]lthough plaintiff alleges to have continuously sustained damages to its reputation and its finances until the dismissal of the underlying suit, the operating cause, the filing of the lawsuit, is not a continuous tort."[142] The prescriptive period for an abuse of process claim does not begin at a later date even when the plaintiff alleges he has continuously sustained damage.[143] Moreover, the prescriptive period does not begin to run at later date just because the plaintiff

[137] *Rieth v. Munguia*, 23-0547, p. 11 (La. App. 4 Cir. 5/30/24), 391 So. 3d 39, 43-47.
[138] *Id.*
[139] *Id.* at 48.
[140] *Id.*
[141] 177 So.3d 747, 752, (La. App. 5 Cir. 10/14/15).
[142] *Id.*
[143] *Id.*

allegedly suffered damages from the abuse of process after the abuse of process occurred.[144]

The prescriptive period for Plaintiffs' abuse of process claims against the Insurance Defendants and Insurance Attorneys began when the allegedly "willful act[s] in the use of the process not proper in the regular prosecution of the proceeding" occurred.[145] The Insurance Defendants and Insurance Attorneys argue that all of their acts alleged to constitute abuse of process occurred more than one year prior to Plaintiffs filing this action in state court on October 20, 2025.[146] Liberty Mutual argues that Mr. Lightfoot was arrested on January 6, 2015; the Orleans Parish Civil District Court issued a judgment against him for attorneys' fees in the underlying civil litigation on January 23, 2015; and the civil judgment was recorded in parish mortgage records, thereby creating a judicial mortgage, on August 22, 2016.[147] As a result, Liberty Mutual argues any alleged abuse of process occurred more than one year before Plaintiffs filed this action.[148] Pipes and Beckman adopted the arguments of Liberty Mutual.[149] Similarly, Progressive and United argue the judgment against Mr. Lightfoot in the underlying civil litigation occurred more than a decade before Plaintiffs filed this action and, as a result, any claim for abuse of process related to that judgment has prescribed.[150] Massey and Strauss also argue that the abuse of process claim against them has prescribed.[151]

Plaintiffs argue they allege "multiple forms of process" including "criminal

[144] *Id.*
[145] *See Waguespack, Seago & Carmichael (A PLC) v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00), 768 So. 2d 287, 290.
[146] R. Docs. 64-1 at p. 8; 79-1 at p. 7.
[147] R. Doc. 64-1 at p. 8.
[148] *Id.* at p. 9.
[149] R. Doc. 65-1.
[150] R. Doc. 79-1.
[151] R. Doc. 80-1 at pp. 7-8.

affidavits, police reports, warrants, and prosecution."[152] Plaintiffs argue their complaint alleges that the "false narrative" of Lightfoot's $50,000 payment from Progressive was used in later criminal proceedings and that Progressive failed to correct this false representation.[153] As a result, Plaintiffs argue that some of their later alleged instances of abuse of process occurred after the judgment in the underlying civil case and have not prescribed.[154] A close reading of the Second Amended Complaint reveals that these allegations regarding criminal affidavits, police reports, warrants, and prosecution are made against defendants Megan Kiefer, Ignatz Kiefer, William Kelly, and Glenn Pardiane, not those defendants defined as Insurance Defendants or Insurance Attorneys in this Order.[155]

It is clear that all of the alleged acts of abuse of process by the Insurance Defendants and Insurance Attorneys occurred well over a year prior to Plaintiffs filing the present action. Specifically, Plaintiffs allege: on January 23, 2015, "private attorney Defendants" obtained a civil judgment against Mr. Lightfoot in the underlying civil litigation;[156] and on August 22, 2016 "attorney and insurance Defendants recorded or caused to be recorded" the judgment in the underlying civil litigation as a judicial mortgage against Lightfoot's homestead.[157] Most of the acts by the Insurance Defendants and the Insurance Attorneys that Plaintiffs allege harmed them occurred at least a decade ago. Plaintiffs do not allege, nor could they, that the Insurance Defendants or Insurance Attorneys participated in Lightfoot's criminal prosecution outside of Progressive

[152] R. Doc. 75 at p. 8.
[153] R. Doc. 93 at p. 19.
[154] *Id.*
[155] R. Doc. 60, Megan Kiefer at ¶¶ 34-36; Ignatz Keifer at ¶¶ 37-38; William Kelly at ¶47, and Glenn Pardiane at ¶ 61.
[156] *Id.* at ¶ 124.
[157] *Id.* at ¶ 126.

responding to a subpoena duces tecum in 2019, which also occurred well outside the prescriptive period.[158] Moreover, Mr. Lightfoot's criminal prosecution was allegedly initiated by NOPD Detective Frank Denton and LSP Lieutenant Alan Arcana.[159] Even if the Court found that, somehow, the initiation of Mr. Lightfoot's criminal prosecution constituted abuse of process on the part of the Insurance Defendants or the Insurance Lawyers, Mr. Lightfoot was arrested in 2015, over a decade before the present action was filed.

Counts XIII Louisiana Fraud/Intentional Misrepresentation, Count XV Louisiana Loss of Consortium, Service, and Society, and Count XVI Louisiana Negligence/Gross Fault/Civil Fault are prescribed. These Louisiana tort claims, at the time the incidents alleged herein occurred, were governed by La. C.C. art. 3492, which provided a prescriptive period of one year from the date of injury or damage.[160] The last date Plaintiffs allege the Insurance Defendants committed acts harming them was the recording of the judgment in the underlying civil action in parish mortgage records, thereby creating a judicial mortgage, on August 22, 2016.[161] Accordingly, these Louisiana torts claims also have prescribed.

## IV. Even if Plaintiffs stated federal law claims against the Insurance Defendants and Insurance Attorneys, claims under Count VIII Civil Rights Conspiracy and Count IX Neglect to Prevent Civil Rights Conspiracy are prescribed.

The Court has found that Plaintiffs have engaged in impermissible group pleading against the Insurance Defendants and Insurance Attorneys and the claims against them

[158] *Id.*
[159] *Id.* at ¶¶ 101, 116.
[160] As discussed *supra* Section I, the Louisiana tort claims in count XI Louisiana Malicious Prosecution and Count XIV Louisiana Intentional Infliction of Mental Distress are dismissed for failure to state a claim and for impermissible group pleading.
[161] R. Doc. 64-1 at p. 8.

should be dismissed for that reason alone. To the extent Plaintiffs assert causes of action against the Insurance Defendants under Count VIII—Civil Rights Conspiracy—and Count IX—Neglect to Prevent Civil Rights Conspiracy—these claims also are prescribed.[162]

In Count VIII, Plaintiff alleges a violation of 42 U.S.C. § 1985(3), stating:

> This Count is brought against Defendants who reached an agreement, explicit or implicit, to deprive Mr. Lightfoot of equal protection or equal privileges and immunities.
>
> Plaintiffs allege that Defendants conspired to fabricate, adopt, repeat, conceal, and continue using the false $50,000 Progressive-payment narrative.
>
> Plaintiffs allege overt acts in furtherance of the conspiracy, including Kiefer's affidavit, Denton's report and warrant application, Pardiane's SIU representation, Arcana's LSP report, Bardley's approval, prosecutorial continuation, Internal Affairs ratification, failure to correct records, and continued property pressure.
>
> Plaintiffs allege that the conspiracy was motivated by race-based discriminatory animus and resulted in injury to Mr. Lightfoot and his family.[163]

In Count IX, Plaintiff alleges a violation of 42 U.S.C. § 1986, stating:

> This Count is brought against Defendants who knew of the § 1985 conspiracy, had power to prevent or aid in preventing it, and neglected or refused to do so.
>
> Supervisory, policymaking, prosecutorial, Internal Affairs, and insurance Defendants were placed on notice through complaints, letters, subpoena proceedings, internal-affairs materials, and court proceedings.
>
> Defendants had the ability to correct records, disclose evidence, halt the prosecution, retract false reports, discipline personnel, or prevent further injury.
>
> Defendants neglected or refused to prevent the continued constitutional violations.

---

[162] Plaintiffs argue that the prescriptive period for fabrication of evidence in Count III begins when the criminal proceeding terminates in the plaintiff's favor, not when the plaintiff first learns of the allegedly fabricated evidence. *McDonough v. Smith*, 596 U.S. 36, 39 (2022). Count III is brought against Megan Kiefer, Glenn Pardiane, Frank Denton, Alan Arcana, Sgt. Patrick Bardley, and "any prosecutorial Defendant who non-immune investigative or evidence-management conduct involved fabrication or continued use of fabricated evidence." These defendants do not include the Insurance Defendants or the Insurance Attorneys.

[163] R. Doc. 60 at ¶¶ 262-266.

> Plaintiffs plead this claim within the one-year limitation period to the extent the last overt acts and continuing failures occurred within the applicable period and plead all timeliness doctrines in the alternative.[164]

As there is no federal statute of limitations for §§ 1985(3), Louisiana's prescriptive period for personal injury claims is applicable to this claim.[165] At the time the alleged incidents occurred, personal injury claims were governed by La. C.C. art. 3492, which provided for a prescriptive period of one year from the date of injury or damage. Accordingly, under Louisiana law, Plaintiff's §§ 1985(3) claim is subject to a one-year prescriptive period.[166] The prescriptive period for claims under 42 U.S.C. § 1986 is one year. The prescriptive period for a claim under of 42 U.S.C. § § 1985(3) and 1986 begins to run from the moment the plaintiff becomes aware or has sufficient information to know that his rights have been violated.[167] In this matter, Plaintiffs became aware of the alleged conspiracy to violate Plaintiff's constitutional rights, and the Insurance Defendants alleged failure to prevent this conspiracy, when they became aware that Mr. Lightfoot's criminal prosecution relied on Mr. Lightfoot's receipt of a $50,000 payment from Progressive. Plaintiffs were or should have been aware of the "false payment narrative" when Mr. Lightfoot was arrested in 2015. At the latest, Plaintiffs were aware that the Insurance Defendants had allegedly conspired to create this "false payment narrative" when Lieutenant Arcana testified in the underlying criminal proceeding that "the $50,000 representation came from Progressive SIU personnel, including Pardiane."[168] At that point, and likely well before, Plaintiffs were aware that a Progressive employee had communicated with the state police concerning the "false payment narrative." As a result,

---

[164] *Id.* at ¶¶ 262-266.
[165] *See Anders v. Town of Franklinton*, No. CV 25-869, 2025 WL 3017217, at *10 (E.D. La. Oct. 29, 2025) (citing *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987).
[166] *See id.*
[167] *See id.*
[168] R. Doc. 60 at ¶ 121.

Plaintiffs were aware that he had suffered an injury from the Insurance Defendants' and Insurance Attorneys' alleged conspiracy, or neglect to prevent a conspiracy, on August 22, 2022, several years before this action was filed. This date falls outside of the one-year prescriptive period that governs §§ 1985(3) and 1986. Accordingly, Plaintiffs claims under these statutes are prescribed.

In addition, Section 1986 provides for liability against third parties based on their knowledge of Section 1985 violations. Section 1986 does not provide an independent cause of action but instead requires the existence of a valid claim under Section 1985.[169] "[A] valid § 1985 claim is a prerequisite to a § 1986 claim."[170] Even if the Plaintiffs Section 1986 claim had not prescribed, this cause of action is not cognizable because Plaintiffs fail to state a valid Section 1985 claim. Therefore, Plaintiffs' cause of action under Section 1986 will be dismissed with prejudice on these grounds, as well.

## V. Plaintiffs have been given multiple opportunities to amend their complaint and will not be given another.

Plaintiffs ask the Court for leave to amend their complaint in the event the Court "concludes Plaintiffs should plead more defendant-specific facts."[171] Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." A "court must have a 'substantial reason' to deny a request for leave to amend" and "may consider factors such as whether there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of

[169] *Bradt v. Smith*, 634 F.2d 796, 799 n.3 (5th Cir. 1981).
[170] *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).
[171] R. Doc. 75 at p. 12.

amendment.'"[172] "The district court is entrusted with the discretion to grant or deny a motion to amend."[173]

The Court will not grant Plaintiffs leave to amend. Plaintiffs already have filed four complaints—three petitions in state court and one amended complaint in this action after they retained counsel.[174] Plaintiffs have had ample opportunities to state plausible claims for relief against the Insurance Defendants and the Insurance Attorneys. The Court finds the fact that the Plaintiffs have been given numerous opportunities to amend is a substantial reason to justify a refusal to allow the Plaintiffs another opportunity. The Court is not obligated to provide Plaintiffs with unlimited opportunities to try to state a claim against the Insurance Defendants and the Insurance Attorneys.

Based on Plaintiffs' "repeated failure[s] to cure deficiencies by amendments previously allowed,"[175] the Court finds further amendment is not warranted. Moreover, any amendment to Plaintiffs' abuse of process and other Louisiana tort claims would prove futile, as Plaintiffs cannot remedy the deficiency to the extent the claims have prescribed.[176] As a result, the Court will not grant Plaintiffs leave to amend their complaint and will decide these motions based on the current pleadings.

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss filed by Liberty Mutual Insurance Company is **GRANTED**.[177]

---

[172] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (citing *Jacobsen v. Osborne,* 133 F.3d 315, 318 (5th Cir. 1998)).
[173] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)).
[174] Plaintiffs even had the benefit of a review of their proposed amended complaint (R. Doc. 52-1) by the Court. The Court advised Plaintiffs that the proposed amended complaint failed to address the arguments raised in the defendants' motions to dismiss and that it should be revised before filing. R. Doc. 53.
[175] *Herrmann Holdings Ltd.*, 302 F.3d at 566.
[176] *See* Section III *supra*.
[177] R. Doc. 64.

**IT IS FURTHER ORDERED** that the motion to dismiss[178] filed by Progressive Direct Insurance Company, Progressive Paloverde Insurance Company, and United Financial Casualty Company is **GRANTED** to the extent that the claims are based on the direct actions of these defendants.[179]

**IT IS FURTHER ORDERED** that the motion to dismiss filed by Henry Pipes and Kristin Beckman is **GRANTED**.[180]

**IT IS FURTHER ORDERED** that the motion to dismiss filed by Adam Massey and David Strauss is **GRANTED**.[181]

**IT IS FURTHER ORDERED** that Plaintiffs' causes of action against Liberty Mutual Insurance Company, Kristin Beckman, Henry Pipes, Adam Massey, and David Strauss are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' causes of action against Progressive Direct Insurance Company, Progressive Paloverde Insurance Company, and United Financial Casualty Company are **DISMISSED WITH PREJUDICE** to the extent that the claims are based on the direct actions of these defendants.

**New Orleans, Louisiana, this 13th day of October, 2026.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

[178] R. Doc. 79.
[179] Plaintiffs seek to hold Progressive vicariously liable for the actions of its "attorneys, agents, and SIU personnel." R. Doc. 60 at ¶ 53. Progressive requested that these vicarious liability claims also be dismissed. R. Doc. 79-1 at p. 8. Vicarious liability is not a cause of action but instead is a method of holding one party financially responsible for another party's action. The Court will address Plaintiffs' attempts to hold Progressive liable for the torts of its employees and agents at a later date, if necessary.
[180] R. Doc. 65.
[181] R. Doc. 80.